237 So.2d 487

Charles O'RORKE et al.

v.

CITY OF HOMEWOOD, Alabama, etc., et al.

6 Div. 553.

Supreme Court of Alabama.

July 2, 1970.

Jenkins, Cole, Callaway & Vance, Birmingham, for appellants.

Irvine C. Porter, Birmingham, for appellee on brief.

Sadler, Sadler, Sullivan & Sharp, Birmingham, for Eugene Wylie Corp.

MERRILL, Justice.

The question presented here concerns the legality of the exchange of a 7.63 acre parcel of real estate owned by the City of Homewood for a privately owned 15-acre parcel of real estate.

Ordinance No. 949 of the City of Homewood was adopted on May 22, 1967, as a means of effectuating the exchange. In effect, the ordinance stated that:

(1) The City had acquired approximately 15 acres from three grantors, with two deeds being executed in 1930 and one in 1954.

(2) The grantors agreed to release any restrictions placed on the use of the property.

(3) A portion of the property had been conveyed to the Armory Commission of the State of Alabama.

(4) A portion of the property had been conveyed to the State of Alabama for right of way.

(5) Only about 7.63 acres of the parcels of property remain available to the City for municipal purposes.

(6) The major portion of the 7.63 acres is limited in its usefulness for a public park, recreation area, or any other municipal purpose, inasmuch as the same is subject to flooding and does flood extensively at periodic intervals.

(7) The Eugene Wylie Corporation has offered to exchange for the 7.63 acres a tract of land located on high ground in the City of Homewood consisting of approximately 15 acres, which would be graded and improved pursuant to the terms and conditions of an agreement between the said Eugene Wylie Corporation and the City of Homewood.

(8) The Armory Commission has agreed to reconvey its interest in the property to the City of Homewood in exchange for the conveyance of an additional parcel of approximately 5 acres to it by the Eugene Wylie Corporation.

(9) The Eugene Wylie Corporation has agreed to construct a new armory on the 5-acre tract with a reversionary clause in favor of the City of Homewood in the event it is abandoned for armory purposes. The new armory building will be made available to the citizens of Homewood at all times when it is not needed or required for military purposes.

(10) The City Council found that the land proposed to be conveyed to the City is more suitable for use by the City and the Armory Commission for park and recreational purposes and for the construction, maintenance and operation of an armory than the 7.63-acre tract it now owns, and the exchange of the properties would be greatly in the public interest.

(11) The offer of Eugene Wylie Corporation to exchange the properties was ac-

cepted, and the offer of the Armory Commission to reconvey the property to the City of Homewood was accepted.

On June 29, 1967, the bill of complaint was filed in equity against the mayor, the City of Homewood, and the Eugene Wylie Corporation seeking to declare Ordinance No. 949 of the City of Homewood null and void and seeking injunctive relief to prevent respondents from conveying any interest in the property owned by the City.

The real property which the City of Homewood sought to convey to the Eugene Wylie Corporation pursuant to the ordinance is alleged to have been a "public park" continuously until the filing of this suit. The four complainants allege that as citizens and taxpayers of the City of Homewood and as owners of property in the immediate vicinity of the "park," they are entitled to make use of the "park" as members of the general public. Further, the bill of complaint states that the agreement conveying the "park" is illegal because the respondent City failed to comply with the requirements of the statutes or Constitution of Alabama governing the alienation of park property, and that the respondents are proceeding to put into effect the terms of the agreement. Complainants allege that as property owners and members of the general public of Homewood, they will be irreparably injured and damaged by the enforcement or carrying into effect of the ordinance.

Respondents, in effect, denied the allegations charging the invalidity of the ordinance in question, and the cause came before the Chancellor for oral hearing on December 11, 1967.

The transcript consists of almost five hundred pages and of some eighty exhibits, including several photographs. Most of the testimony of complainants' witnesses concerns the history of the land and its use by the public, while the respondents sought to bring out disadvantageous characteristics of the land when used as a park and the desirability of the proposed exchange.

Respondent, Eugene Wylie Corporation, planned to construct a large shopping mall on the property, and testimony was offered as to the benefits the City would receive from taxation and increased spending in the city.

The evidence tended to establish these facts about the land. The City of Homewood had acquired the fee simple title to most of the land in lieu of payment of certain municipal assessment liens exceeding the sum of $28,000.00 in 1930. The rest of the property, known as the Smyer tract, was acquired by the City in 1954. None of the instruments conveying this property to the City mentioned dedication of the land as a public park, or created an obligation for the City to hold the land as a public park. Any restrictions on the use of the property were released by the grantors prior to passage of the ordinance. (These original restrictions were that the property would not be used for residential or commercial purposes).

The land lies along the south side of Shades Creek Parkway in Homewood. Shades Creek runs through the area and floods the land several times a year. Respondents offered evidence of severe and periodic flooding. No evidence was presented of any improvement made on the property before 1933. A C.W.A. project built a pavilion, barbecue pits and a stone entrance in 1933 and cleared some of the underbrush. An attempt was made to build an amphitheater but it was washed away when the creek flooded. A shooting range was established in the late 1940's and part of the area was fenced off to keep out the public. The property remained heavily grown up in underbrush.

In 1954, a full time park superintendent was hired by the City to oversee all of its parks. The property first appeared in the budget in October, 1958. In 1957 or 1958, regular expenditures were made for the property from the budget of the Park and Recreation Board. A program of improvement was started, and a summer program

with a director was conducted there, but weather conditions and flooding ended the program about 1965.

During the summer, the most useable part of the property is cleared daily and expenditures have been made for maintenance and cleaning. It is generally used by groups. The pavilion may be reserved and complainants introduced evidence that it had been used often during summer months.

At the present time, the armory occupies about one-half of the property, while the cleared part of the remaining half has playground equipment and a picnic area. The uncleared wooded area is said to be low, swampy and full of snakes. One of appellants' witnesses referred to it three times as a "snake pit."

The initiative behind the attempt at alienation of the property was a proposal by the Eugene Wylie Corporation seeking an exchange of properties, so that a large shopping mall could be built on the property then owned by the City. It will suffice to say that the City would gain much in increased tax revenues from the exchange, along with a superior park area and a new armory. Respondents introduced much evidence in this regard. Other aspects of that matter have been before us. See Zoning Board of Adjustment of City of Mountain Brook v. Wright, 283 Ala. 654, 220 So.2d 261; Cudd v. City of Homewood, 284 Ala. 268, 224 So.2d 625.

A final decree was rendered by the trial court on December 13, 1967, stating in part as follows:

"This Court decides, hereby, that the scattered and sporadic treatment of certain indefinitely described portions of the area in question by the City of Homewood and the use by the general public as a playground or park area was not such as to constitute and determine real property described in the Bill of Complaint, or any portion thereof, to be a public park, or 'park property', within the contemplation of the pleadings in

this cause and the legal meaning and import of these terms under the Laws and Statutes of the State of Alabama."

Accordingly, the court held that complainants were not entitled to the relief prayed for in their bill of complaint, and ordered the case dismissed. Thereafter, this appeal was perfected.

The only assignments of error argued by appellants are that the final decree is contrary to the great weight of the evidence.

Appellants challenge the alienation of this municipal property on the ground that the City failed to comply with the legal requirements said to be imposed upon such a transfer. Amendment 112 of the Constitution of Alabama of 1901, adopted in 1956 (listed in 1958 Recompilation, Vol. 1, p. 427), provides in part:

" * * * It is provided, however, that the legislature may enact general, special, or local laws authorizing political subdivisions and public bodies to alienate, with or without a valuable consideration, public parks and playgrounds, or other public recreational facilities and public housing projects, conditional upon the approval of a majority of the duly qualified electors of the county, city, town, or other subdivision affected thereby, voting at an election held for such purpose."

This constitutional provision is implemented by an Act of the legislature listed as Tit. 47, § 62(1) in the 1958 Recompilation:

"The governing bodies of counties, cities, towns, and other subdivisions of the state shall have full power and authority to alienate public parks and playgrounds, other public recreational facilities, and public housing projects, on such terms as may be agreeable to them, provided such alienation is first approved by a majority of the qualified electors of the county, city, town, or subdivision affected thereby, voting in a referendum election held for such purpose."

Appellants contend that the property is a "public park" "playground," or "other public recreational facility" which may be alienated only by compliance with the election provision which they claim to be mandatory. Appellants concede that there is a difference in the law concerning the alienation of property devoted by a city for public use and property owned by a city but not held for public use.

Appellees contend that the alienation of the property should be allowed under the general authority of a municipality to own and convey property, as provided in Act No. 843, Acts of Alabama 1953, Vol. II, p. 1135, and listed as Tit. 37, § 477(1), 1958 Recompilation, which reads as follows:

"The governing body of any city or town in this state may, by ordinance to be entered on its minutes, direct the disposal of any real property, not needed for public or municipal purposes, and direct the mayor to make title thereto; and a conveyance made by the mayor in accordance with such ordinance invests the grantee with the title of the municipality."

The exercise of discretion by the officials of the City in seeking to transfer the park is not attacked by appellants. They claim that no room for discretion existed because the property was in fact a park, and that the only factual issue involved in this case is whether or not the property was in fact a park. Appellants conceded in the lower court that if the property were not held to be a park, their case would fail.

Appellants cite and rely on the cases of Moore v. City of Fairhope, 277 Ala. 380, 171 So.2d 86, and Douglass v. City Council of Montgomery, 118 Ala. 599, 24 So. 745, for the principles that (1) the legislature is powerless to authorize the sale by a municipality of a public park dedicated by an individual, and (2) that authority must be conferred by statute to enable a municipality to alienate land held and used for public park purposes. We do not think those cases are apt authority here. In *Moore,* the dedication had been by an individual for the benefit of the public to use as a public park and it had been so used for forty years. In *Douglass,* the park had been dedicated by an ordinance and had been so maintained some twenty years.

We think the following principles govern the instant case.

■ Municipal corporations are authorized to purchase and acquire real estate sold in settlement of municipal assessment liens, and after the expiration of the time for redemption, the municipality has good title to property so acquired. Tit. 37, § 561, Code 1940 (§ 2220, Code 1923); Messer v. City of Birmingham, 243 Ala. 520, 10 So.2d 760; Griffin Lumber Co. v. Neill, 240 Ala. 573, 200 So. 415, 134 A.L.R. 286.

■ The act of dedication is in the nature of a conveyance of title and interest in the land, it can only be made by the owner, and the burden of proving it, including the ownership of the dedicator, rests upon the party asserting the dedication. State ex rel. Davis v. Meaher, 213 Ala. 466, 105 So. 562; Witherall v. Strane, 265 Ala. 218, 90 So.2d 251.

■ To establish a dedication, the clearest intention on the part of the owner to that effect must be shown, and the evidence must be clear and cogent, and the acts of the owner relied on to establish a dedication must be unequivocal in their indication of the owner's intention to create a public right exclusive of his own. Witherall v. Strane, supra; Smith v. City of Dothan, 211 Ala. 338, 100 So. 501.

■ Where no terms or limitations upon the use of land by the city are impressed, the rules in respect to a grant or dedication with terms or conditions annexed are not applicable. Roach v. City of Tuscumbia, 255 Ala. 478, 52 So.2d 141[6].

■ Where lands are conveyed to a municipality free from any trusts or condi-

tions, and afterwards used for park purposes, the municipality may sell and convey lands to any grantee that it may choose, under its charter power to sell and dispose of any property owned by it, or it may devote the property to other public uses. Vol. 10, McQuillan Municipal Corporations, 1966 Revised, Sec. 28.52a, p. 175; Carlson v. City of Freemont, 180 Neb. 262, 142 N.W.2d 157; Fielding v. Board of Education of Patterson, 76 N.J.Super. 50, 183 A.2d 767.

■ Here, the conveyances to the City of this property contained no dedication provisions by the then owners. The City did not dedicate the property as a park by ordinance. Prior to the beginning of the present controversy, the area was reduced from 15 acres to 7.63 acres by sales for an armory and highway right of way. Half of the remaining land is not usable for park purposes. The remainder was used by the public chiefly under a recreation program, but we are not convinced that such use amounts to a perpetual dedication of the property as a public park.

Many of us can remember, in cities and towns with no organized recreation program, that vacant lots and tracts of land belonging to the municipality were used by the public for ball grounds, picnic grounds, public gatherings, political speakings and celebrations, but this use did not make the property public parks, and most of those vacant lots are now used and occupied.

While not exactly apt to this case, in Nearhos v. City of Mobile, 257 Ala. 161, 57 So.2d 819, the City of Mobile instituted condemnation proceedings to condemn a certain tract for a "public park." After an appeal of the condemnation proceedings to the circuit court, the parties worked out an agreement and a warranty deed was given without any restrictions by the owner to the City of Mobile. The City of Mobile did not use the property for any particular purpose and, after four years, conveyed the property to the L & N Railroad for a passenger station and depot. This court held that the City of Mobile had acquired the title by purchase with no limitations and was free to convey to the L & N Railroad. See also Hall v. City and County of Denver, 115 Colo. 538, 177 P.2d 234; Newell v. City of Kenosha, 7 Wis.2d 516, 96 N.W.2d 845.

In Board of Revenue of Etowah County v. Hutchins, 250 Ala. 173, 33 So.2d 737, the governing body of the county was held to have the authority to contract for the sale of the present courthouse site. This court said:

"While a municipality has no implied power to alien or to dispose of property dedicated to or held in trust for the public use, City of Bessemer v. Huey, 247 Ala. 12(3), 22 So.2d 325, ordinarily its property abandoned from public use or not devoted thereto may be disposed of by the managing authorities when acting in good faith and without fraud. Jackson v. Ball, 211 Ala. 273, 100 So. 327; Corning v. Patton, 236 Ala. 354, 182 So. 39; 133 A.L.R., Note, p. 1245. See also 14 Am.Jur. 207; 15 C.J. 537; 20 C.J.S., Counties, § 172; 3 Dillon, Mun.Corp., 5th Ed., §§ 1102–1104.

\* \*˙ \* \* \* \*

"We think this is a proper application of the statute to the case in hand. While as a general proposition of law, county property immediately in the public use may not be disposed of by the governing authorities of a municipality, still in the management and control thereof they 'exercise a discretion that cannot be exercised for them' and judicial revision of such action is permitted only when the action is attended with bad faith or fraud. \* \* \*"

Here, there is no charge or suggestion of fraud or bad faith. Appellants' witnesses admit that the exchange of properties will benefit the City. The proposed culvert to govern the flow of Shades Creek would cost many times the worth of the property. One of appellants' witnesses, Lem Bryant, a Homewood business man since 1927, testified: "I told the Mayor

that anybody that wanted to swap a snake pit for a well terrained piece of property, I thought the man buying the snake pit was crazy."

We cannot agree that the trial court, after hearing the testimony in the cause, reached a conclusion which was contrary to the great weight of the evidence.

This case was originally assigned to another member of the court and was recently reassigned to the author of this opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, HARWOOD and MADDOX, JJ., concur.