McCORD, Judge.
Santa Rosa County and the City of Gulf Breeze appeal from a summary final judgment quieting title to a parcel of land in favor of appellees (landowners). These landowners are the owners of lots fronting on the disputed parcel of property, which separates their lots from Pensacola Bay in Santa Rosa County, Florida.
The pertinent facts to this appeal are rather involved but are undisputed. In September of 1950, Pensacola Shores, then the owner of the disputed land, entered into an unrecorded contract for sale of the land with Casablanca Company. This contract provided that Casablanca, after it acquired title, could subdivide the property into lots, blocks and streets but that “no part shall be designated or dedicated as parks or public *301 property other than streets.” In December of that year, Casablanca filed a plat of its proposed subdivision with Santa Rosa County. The filed and recorded plat referred to the parcel of property in dispute as Sand Beach Park. In filing the plat, Casablanca represented that it was the owner of the land and included in the plat the dedicatory language that “all streets and parks are hereby dedicated to the public ...” The plat was subsequently considered by the Board of County Commissioners on December 12, 1950, and was approved “subject to approval of the attorney for the board.” There is no indication in this record that the county attorney ever approved the plat.
Casablanca did not actually acquire title to the land until March of 1951. As the landowners point out, the controlling statute required, among other conditions to the offering and acceptance of such plats, that “there shall be a dedication of the plat by the owner or owners, and his or their wives.” § 177.06, Fla.Stat. (1949). Casablanca subsequently sold lots in this subdivision pursuant to the 1950 recorded plat, which contained the Sand Beach Park designation.
In 1962 the trustees of Casablanca, by then a dissolved Florida corporation, executed [pursuant to Section 608.30, Florida Statutes (1961)] a deed titled “quit-claim deed,” in favor of the landowners as to the Sand Beach Park parcel. Also, in 1962, the City of Gulf Breeze became a municipal corporation.
Upon these facts the landowners argue that the final summary judgment can be sustained under any of three theories: (1) that the offer of dedication of the park by Casablanca was void ab initio because Casablanca was not the legal owner at the time it dedicated the plat; (2) that the quitclaim deed filed in 1962 effectively revoked the earlier offer of dedication of the alleged park before there was an acceptance, or (3) that the alleged park dedication was never accepted. Because the trial judge did not state the reasons for ruling as he did, we cannot determine upon what ground or grounds he entered summary judgment.
We find it unnecessary to rule upon the first theory because we find that even if the offer of dedication of the park by Casablanca was a valid offer, the deed which was filed September 11, 1962, effectively revoked the offer of dedication before it was accepted. There was never a formal acceptance by the county or city, and the record does not show an implied acceptance by a public user before the deed was recorded.
This was not an ordinary quitclaim deed. By its language, the trustees not only re-mised, released and quitclaimed the dissolved corporation’s interest in the property described as Sand Beach Park to the individual landowners fronting on such property but conveyed the dissolved corporation’s interest in such property to the landowners. It also stated the purpose for which the deed was drawn in language as follows:
WHEREAS, CASABLANCA COMPANY, a Florida Corporation was the owner and developer of the several parcels of Casablanca Subdivision in Santa Rosa County, Florida; and
Whereas, there is some doubt about the ownership of certain parcels or strips of land lying between the water and some lots on said subdivision; and
Whereas Casablanca Company, has been dissolved under the laws of the State of Florida, leaving the undersigned, ... as the sole surviving stockholders, directors and officers of the Casablanca Company, which individuals now own individually, or as trustees for the dissolved corporation, all right, title or interest remaining of record in the Casablanca Company, and
Whereas it is the desire of the undersigned grantors by this conveyance to remove all doubt as to the title and accompanying riparian rights in certain supposedly waterfront lots in various parcels of Casablanca Subdivision;
KNOW ALL MEN BY THESE PRESENTS that we, .. . individually, and in our capacities as sole surviving stockholders, officers and directors of Casablanca Company, a dissolved Florida *302 Corporation, do hereby remise, release, quitclaim and convey to the record title holder or holders of each lot in the following described subdivisions: . . .

their heirs, executors, administrators, successors and assigns, all our right, title and interest in and to any unplatted parcel of land lying between the lots as shown in said plats, and the water. ... It is our intent hereby to vest title in unplatted parcels of land in the individual adjacent lot owner with full riparian rights attendant thereto, with the limits of each lot owner’s ownership being delineated by an extension of his lot lines to the water.
This deed of conveyance with the aforesaid clarifying language is completely inconsistent with a continuation of the offer of dedication of the property described as Sand Beach Park, and its recordation put the county and city on notice that the offer was revoked as to the park. Such offer previously made by the grantor corporation could not remain as an open offer after the trustees of the dissolved corporation had conveyed its interest to other parties. Thus, the effect of the deed was to withdraw and revoke the previous offer of dedication insofar as the property known as Sand Beach Park is concerned. The law regarding this is well stated by the Supreme Court in City of Miami v. Florida East Coast Ry. Co., 79 Fla. 539, 84 So. 726, 729-30 (Fla.1920):
“Decisions recognize a clearly defined distinction between the rights acquired by the public through dedication effected by platting and sale, and the private rights acquired by the grantees by virtue of the grant or covenant contained in a deed which refers to a plat, or bounds the property upon a street through the grant- or’s lands. These decisions adopt the view that where lands are platted and sales are made with reference to the plat, the acts of the owner in themselves merely create private rights in the grantees entitling the grantees to the use of the streets and ways laid down on the plat or referred to in the conveyance. But these rights are purely in the nature of private rights founded upon a grant or covenant, and no public rights attach to such streets or lands until there has been an express or implied acceptance of the dedication, evidenced either by general public user, or by the acts of the public authorities. In this view, the making of the plat and the sale of lands with reference thereto are merely evidence of an intent to dedicate, which like every other common law dedication, to be made complete and carried into effect so as to create public rights, must be accepted and acted upon by the public.”
A common-law plat has no effect as a conveyance, and an offer to dedicate thereby created may be revoked by the owner or his grantee at any time before acceptance by the public. After a common-law dedication is once accepted by the public, it is irrevocable except with the consent of the public and of those persons who have vested rights in such dedication. The acceptance of a common-law dedication need not immediately follow the offer to dedicate, but must be within a reasonable time and before withdrawal by the offerer. What constitutes a revocation of an offer to dedicate depends very largely upon the circumstances and is usually a question of fact, and it may be shown by acts inconsistent with the public use to which the land is offered to be dedicated, as by conveyance of the property, . . .
The general rule seems to be that the platting of land and the sale of lots pursuant thereto constitute a dedication, if it may be so called, of the public places delineated upon the plat only as between the grantor and purchaser, and that, so far as the municipality is concerned, such acts amount to a mere offer of dedication, and there is no complete dedication without an acceptance of some kind by the municipality.
Where a common-law offer of dedication has been made and has not been accepted by or for the public, a conveyance before acceptance of the property so offered may constitute a revocation as to *303 the public of the offer to dedicate. [Citations omitted; emphasis supplied.]
As can be seen from the above quotation, it is immaterial to this cause of action that lots were sold to other parties in reference to the plat. This suit involves only public rights to the property known as Sand Beach Park and does not involve or adjudicate private rights of other lot owners in the subdivision.
AFFIRMED.
ERVIN and SHAW, JJ., concur.