These are appeals from a final judgment of the trial court holding invalid a deed executed by the Mayor of Vestavia Hills ("the City") to the Vestavia Hills Board of Education ("the Board"). The plaintiffs live adjacent to a 13-acre tract of undeveloped property in Vestavia Hills. Their complaint contained five separate counts, and also included a prayer for relief that requested generally that the deed from the City to the Board, dated February 17, 1975, be set aside on the basis that the property conveyed in the deed was a public park.
On August 26, 1987, Judge Cherner issued his final judgment, in which he held that the City had not complied with the provisions of Ala. Code (1975), § 11-47-20, prior to the conveyance to the Board. The deed from the City to the Board was set aside, thereby revesting title in the City, and all other relief was denied. The Board appeals, and the plaintiffs cross-appeal.
We adopt the opinion of the trial court as set out below:
 "FINAL JUDGMENT
"This case has now been submitted for decision following an oral hearing on the merits of the claims asserted by the plaintiffs.
"The plaintiffs, Gary Utz, et al. (hereinafter "Utz"), are all individual residents of the City of Vestavia Hills. They seek a declaratory judgment [holding] that the real property described in this order is subject to a trust under the terms of which it must be owned by the City of Vestavia Hills and used as a park for the residents of Vestavia Hills.
"Utz has also asked this Court to adjudge that the deed executed by the City of Vestavia Hills and conveying the real property to the Vestavia Hills Board of Education is invalid.
"The real property which is the subject of this dispute comprises over thirteen (13) acres of unimproved land, the legal description of which is as follows:
 "`Lots 3 and 4, in Block 3, according to the Survey of Shades Park, as recorded in Map Book 8, Page 22, in the Probate Office of Jefferson County, Alabama. [The reference to Map Book 8, Page 22, is in error. Lots 3 and 4, Block 3, according to the survey of Shades Park, are recorded in Map Book 7, page 74, as referenced in numbered paragraph 3 of the final judgment.]
 "`Also, Lot "C", according to a Resurvey, as recorded in Map Book 61, Page 96, in the Probate Office of Jefferson County, Alabama, of Lots 2, 3 and 4, in Block 2, Shades Park First Addition.
"For convenience, the above described property will hereinafter be referred to as `Subject Property.'
"Subject Property was conveyed to the City of Vestavia Hills initially by a series of deeds executed by Isadore and Hortense Pizitz.[1]
"All of the deeds evidencing the conveyance of the subject property to the City of Vestavia Hills contain the following provision:
 "`The use of the property herein conveyed is restricted to public park and *Page 1381 
recreational uses and shall never be used for any other or different purpose.'
"On February 17, 1975, the Mayor and City Council of the City of Vestavia Hills authorized the conveyance of the property by the City of Vestavia Hills to the Board of Education of Vestavia Hills by adopting Resolution Number 416 providing in part as follows:
 "`1. That in order to effect a change in the record title of the property heretofore given by the Pizitz Family to the City and through the City to the Board of Education for public school purposes, the Mayor is hereby authorized to execute a deed for and on behalf of the City conveying record title of said real estate to the Board of Education of Vestavia Hills and to deliver the same to the said Board of Education for recording in the Probate Office of Jefferson County, Alabama.'
"On that same day, February 17, 1975, the Mayor of Vestavia Hills executed a deed conveying Subject Property and certain other property given to the City of Vestavia Hills by the Pizitz family to the Board of Education of Vestavia Hills. That deed is recorded in Real Volume 1236, Page 743.
"During the period from September through November, 1976, Isadore and Hortense Pizitz, Marcia and Arthur Pruce, and John Jacobson for himself and as the devisee under the last will of his wife, Ann Jacobson, who had since died, executed instruments entitled `Release from Restrictions'. Each of the instruments recited that the Subject Property was then owned by the Board of Education of Vestavia Hills. Each also recited:
 "`Whereas, there has been a complete change in the neighborhood and the surrounding area of the hereinafter described property and the present owner and party placing said restrictive covenants on said property desire to completely release the hereinafter described property from the said restrictive covenants hereinabove described.'
"The instrument then recited that each of the persons executing the same released, waived and cancelled the restrictions previously imposed by that person in deeds relating to the Subject Property.
 "I. WHETHER THE USE OF THE SUBJECT PROPERTY REMAINS RESTRICTED TO PARK AND RECREATIONAL USES.
"Utz contends that the Subject Property is and must remain a public park and recreation area as a matter of law. Utz says that there was a common law dedication of the Subject Property. He says that the Subject Property was conveyed to the City of Vestavia Hills restricted to use as a public park and recreation area and that the dedication was accepted or made complete of the Subject Property as a park and recreation area when the Subject Property was subsequently used by members of the public for such purposes.
"According to Utz, once the offer of dedication had been accepted by the public, it was irrevocable and the Pizitz family was without authority to release the Subject Property from the restriction which they had placed on the same.
"Utz also says alternatively that if the common law dedication had not been completed by public use of the property, it was still complete as to abutting owners who bought residential lots and relied on the restrictions on the use of the Subject Property to that of a park and recreation area, and that the restriction on the use of the property is therefore enforceable by them.
"Utz also argues that, in any event, the conveyance of the Subject Property by the City of Vestavia Hills to the Board of Education of the City of Vestavia Hills is invalid because the City Council in adopting Resolution 416 authorizing the conveyance failed to make the determination required by Section11-47-20, Ala. Code 1975, that the Subject Property was surplus or excess property.
"It is the position of both the City of Vestavia Hills (`Vestavia') and the Board of Education of the City of Vestavia Hills (`Board') that the act of dedication of the property by the original grantors was revoked *Page 1382 
by members of the Pizitz family before the acceptance of the dedication either by Vestavia or by members of the public.
"Vestavia and the Board say that Utz failed to prove that the Subject Property was used as a park between 1963 and 1976; that Vestavia never accepted Subject Property as dedicated for use as a park or recreation area either by the adoption of a resolution or ordinance, or by any conduct on its part.
"Vestavia and the Board also argue that Utz and the other persons named as plaintiffs have no standing as abutting property owners to question the use of Subject Property. They say that Utz and the other property owners are not in the same subdivision as the subject property and are, therefore, not in privity with Vestavia or the Board [and] cannot enforce the restriction in the Pizitz deeds.
"Vestavia and the Board also argue that Utz is barred by the statute of limitations set out in Section 6-2-31; and that they have no standing to challenge the instruments executed by the Pizitz family releasing the Subject Property from the restrictions on its use.
"With respect to the conveyance by Vestavia to the Board, Vestavia and the Board say that Section 11-47-20 is not applicable in this case. They say that Vestavia should not be required to determine that the Subject Property was not needed for public or municipal purposes when the conveyance by Vestavia to the Board was for a public purpose.
"This Court concludes that Utz and the other property owners named as plaintiffs in this action do have standing to ask for a declaratory judgment on the question whether the subject property may now be used only for park and recreational purposes. Douglassv. City Council of Montgomery, 118 Ala., 599, 24 So. 745 (1898). In that case, the plaintiff, James Douglass, brought suit as a resident citizen and a taxpayer of the City of Montgomery. He sought to have declared void two ordinances adopted by Montgomery's city council granting an area known as Gilmer Park to one railroad company, and granting to the other the right to lay a railroad track across Gilmer Park. Reversing the decision of the trial court, the Supreme Court held that Douglass had standing to challenge the action of the City Council even though he was not an abutting property owner. The Supreme Court stated in part:
 "`In these days of rapid and cheap transit in cities and towns, brought about by the applications of steam and electricity, it would seem that every resident property holder of the municipality occupies, in a sense, the position of an adjacent owner to its public parks, dedicated to public use, and is clothed with all the valuable rights and interest in such dedications, as the one whose property abuts upon them. These parks, by these means, are the great resorts of health and recreation by all the inhabitants of the municipality, valuable and beneficent in their advantages to all alike. . . . If there ever existed any good reason why such relief should be invoked alone by an abutting proprietor, it may be that it must give way, in accommodation to the necessities and conditions of modern life, brought about by the wonderful discoveries of the present age.
 "`But, we find no difficulty in holding, that the complainant in this case is in reason, and for the purposes of this case, an adjacent proprietor to the said park, and occupies such a position as entitles him to maintain this bill. He can look out from the front of one of his houses, with an unobstructed view, on to the park, a distance of only 110 feet from him. This gives him the attitude of an adjacent proprietor. From his other lot, the view is obstructed, though it is only 250 feet from the park. For the purposes of air and recreation, he has shown he has a direct and special interest against its proposed destruction.'
[118 Ala. at 613-14, 24 So. at 748.]
"[The] property owners who brought this action consist of abutting property owners as well as property owners within close vicinity to the Subject Property. As such, they have standing to bring this action. *Page 1383 
"The dedication of the Subject Property for use as a park and recreational area is established by the express language contained in the deeds executed by members of the Pizitz family. [Language] such as that contained in these deeds is commonly used to dedicate property for public use and is legally acceptable. See, e.g., 23 Am.Jur.2d Dedication § 28 at p. 25 [1983]; FairhopeSingle Tax Corp. v. City of Fairhope, 281 Ala. 576, 206 So.2d 588
(1968); Thomas v. Bullock County Commission, 474 So.2d 1094, 1098
(Ala. 1985).
"However, the language set forth in the deed is considered merely an offer of dedication by the grantors until such time as the dedication has been accepted by the grantee. The following appears in 23 Am.Jur.2d Dedication §§ 41 and 42, pp. 37-38 (1983):
"`§ 41.
 "`The acceptance of a dedication, or what may be more accurately called an offer of dedication, has many of the incidents of the acceptance of a contract and of a deed, and is what makes the dedication complete.
"`. . . .
"`§ 42.
 "`Unless otherwise provided by statute, acceptance of an offer to dedicate land to public use is ordinarily essential to a complete dedication. . . .'
"The manner by which a dedication may be accepted by a municipality is also discussed at 23 Am.Jur.2d Dedication § 51, p. 44, as follows:
 "`Acceptance of an offer of dedication may be evidenced in various ways. It may be either express or implied, by formal action or by public use. . . .
 "`Formal acceptance may consist of a formal ratification by the proper official board of the municipality, a formal resolution or order by any other proper official body, the adoption of a municipal ordinance, the vote of a town council, the signing of a written instrument by the proper authorities, the execution of an official map by a city showing the street offered to be dedicated as such, or an act of the legislature incorporating a town, or adopting a map showing its limits.'
"The municipality may also accept dedication of property by the construction of improvements on the same or by authorizing public utilities or others to make improvements on the same. Such acts would be considered an implied consent by the municipality to accept the dedication or evidence of such implied consent.
"Under common law principles, property dedicated for public use may also be accepted by the use of the same by members of the public for the purposes for which the same was dedicated. The following comments from 23 Am.Jur.2d Dedication § 54, discuss the character of the acts required to establish such use by the public:
 "`In those jurisdictions in which user is a method of acceptance, there is no established standard by which the use necessary to determine an acceptance by the public may be measured and declared to be sufficient, but as a rule a use that would naturally follow from the space and the settlement of the community is sufficient. In other words, the sufficiency of the user depends on the circumstances of each case. The user must, however, be of such character as to indicate the intention to accept the property for the particular purpose to which it was dedicated.
 "`The public use need not necessarily be constant, but merely continuous in the light of the particular nature of the land. For example, where acceptance by public user relates to a public park or beach, the use by the public during appropriate seasons by going on the land, occupying it for camping purposes, parking automobiles, eating lunches, and viewing the ocean is sufficient to establish the fact of acceptance. But the occasional use of land as a camping ground or as a road by strangers, there being nothing to identify it as a park, such as the planting and maintenance of shrubbery, does not constitute public acceptance of an offer to dedicate the land as a park.
 "`Acceptance of dedication may be shown by use by a comparatively small *Page 1384 
number of persons, as in the case of a short street to the seashore. Acceptance by a portion of the public inures to the benefit of all, and gives those performing the user no right to appropriate the premises for private purposes.'
"As this Court has noted earlier in this opinion, the members of the Pizitz family comprising the original grantors or their successors in interest, all executed instruments purporting to release the Subject Property from the restriction on its use by instruments recorded on December 16, 1976, in the Probate Court of Jefferson County, Alabama. If the dedication of the Subject Property had not been accepted by the public use of the same by that date, then the instruments executed by the Pizitz family have the effect of revoking the original dedication of the property for park and recreational purposes. On the other hand, if the dedication had been accepted by public use of the property for the purposes for which the same had been dedicated prior to the execution and recordation of the instruments purporting to revoke the dedication, then the dedication would have become irrevocable and the attempted revocation of the same would have been ineffective. Ft. Payne Co. v. City of Ft. Payne, 216 Ala. 679,114 So. 63 (1927); Smith v. City of Dothan, 211 Ala. 338,100 So. 501 (1924); Turner v. Massee, 250 Ala. 134, 33 So.2d 258
(1947); Santa Rosa County v. Pollak, 418 So.2d 300
(Fla.Dist.Ct.App. 1982); Osborne v. Town of North Wilkesboro,280 N.C. 696, 187 S.E.2d 102 (1972); City of Ord v. Zlomke,181 Neb. 573, 149 S.W.2d 747 (1967).
"In Santa Rosa County v. Pollak, supra, the owner of certain property filed for record a plat of the proposed subdivision showing on the plat streets and parks which were stated to be dedicated to the public. The court found that the Board of County Commissioners had considered the plat and had approved it subject to the approval of the attorney for the board, but that the county attorney had never approved the same. Subsequently, the corporate owner was dissolved. The trustees for the corporate owner following the dissolution executed a deed conveying the interest of the dissolved corporation in the unplatted parcels to the owners of the lots shown in the plat. Concluding that the effect of the deed was to revoke the previous offer of dedication, the District Court of Appeal of Florida affirmed the decision of the trial court granting summary final judgment quieting title to the disputed property in favor of the lot owners. The District Court opinion stated that an offer to dedicate may be revoked by the owner at any time before acceptance by the public. It found that the dedication had not been accepted prior to the conveyance to the owners of the lots.
"In the present case, no evidence has been presented that the City of Vestavia Hills ever accepted the dedication of the Subject Property for park and recreational purposes by the adoption of a resolution or ordinance; by undertaking to make improvements to the property or by any other act or conduct on the part of its governing body which could be construed as an implied acceptance of the dedication.
"The issue then presented for determination by this Court is whether there was ever an acceptance of the dedication by public use of the property before the fall of 1976 when the instrument seeking to revoke the dedication was executed and filed. Evidence concerning the use of the Subject Property by the public after 1976 would not be relevant in any event.
"Throughout the entire period from 1962 through 1976, and also up to the present time, the Subject Property has remained in a completely undeveloped and natural state with trees and underbrush located throughout the same.
"The topography of the Subject Property is almost all sloping with some slopes steeper than others. There are small hills and ravines throughout with one small level area at the top of one hill.
"At the request of all the parties, the Court made a visual inspection of the Subject Property and is able to confirm the fact that there have been no improvements of any kind made to the property. While there was testimony concerning an old logging *Page 1385 
trail located on the property, this Court saw no evidence of the same on its inspection of Subject Property. There was very little evidence of any other trails which had been established on the property as a result of its use by the public.
"Near the top of the property on the level space which had been cleared there was a tent which had been erected there by the children of George Graham, a property owner residing on Willoughby Road very near the Subject Property.
"Utz and certain of the other plaintiffs testified that they had purchased their lots abutting or near the Subject Property relying on statements made to them that the Subject Property had been permanently set aside as a park and recreation area or bird sanctuary. In every case, however, the evidence was that those statements were made by real estate developers or agents and it was not shown that such persons had any authority to act for the members of the Pizitz family or Vestavia.
"There was also evidence concerning the use of the property. Some of the testimony regarding use was inconsistent. For example, there was the testimony of Fred McCrory that he had lived in the vicinity of the Subject Property for 22 years; that the property had been a bird sanctuary; and that over a period of 22 years he and his children may have walked on the Subject Property approximately ten times. Raymond Crockett testified that he had seen untold number of children and adults walking all over the property. George Graham testified that he and his family had had picnics on the Subject Property and that he had also seen others picnicking there. His children now have their third tent sitting at the top of the level space on the Subject Property. Mary Gillespie had seen her children and their friends playing cowboys and Indians and riding bicycles on the Subject Property and fishing in the creek. She acknowledged that the property was overgrown with underbrush and vines and that there were many, many trees. Joseph Lynch had seen 15 to 20 boys playing on the Subject Property continuously. Gary Utz testified that he had walked nature trails on the property and had seen his children playing there. Henry McJenkins stated that he had an unobstructed view of the Subject Property from his house and has seen children playing on the property and people walking on the same. When asked how often, McJenkins testified that at least once a week he saw a bicycle or car parked at the end of Willoughby Road.
"Chris Christ testified that he drives on Willoughby Road on an almost daily basis and has not seen or heard of any persons being on the Subject Property. He has seen a couple of bicycles and some children on occasion at the dead end of Willoughby.
"Jim Bentley, President of Vestavia Hills Park and Recreation Board, testified that his Board made policy in reference to the parks system and was in charge of the control and maintenance of parks. He stated that the Subject Property had never been classified by the Board as a park. Bentley had himself walked over the Subject Property. He found that the same was hilly and unkept, with heavy foliage.
"The burden of proving a dedication rests upon the party asserting it. State ex rel. Davis v. Meaher, 213 Ala. 466,105 So. 562 (1925); Witherall v. Strane, 265 Ala. 218, 222,90 So.2d 251 (1956); O'Rorke v. City of Homewood, 286 Ala. 99, 104,237 So.2d 487 (1970). Likewise, acceptance of a dedication must be proved by the party asserting that there was such an acceptance. 23 Am.Jur.2d Dedication § 76, p. 63.
"In O'Rorke v. City of Homewood, supra, O'Rorke and three other residents of Homewood sought a declaratory judgment that 7.63 acres of land owned by Homewood had been dedicated as a park by the public use of the same and could not therefore be conveyed to a third party who planned to construct a large shopping mall on the property.
"The 7.63-acre tract was situated along the South side of Shades Creek Parkway. There was evidence of severe and periodic flooding from Shades Creek. However, in 1933, a C.W.A. project built a pavilion, barbecue pits, and a stone entrance to the area. Some of the underbrush was *Page 1386 
cleared. An attempt was made to build an amphitheater, but it was washed away when the creek flooded. In the late 1940s a shooting range was established on part of the property, and it was fenced off to keep out the public. The area remained heavily grown up in underbrush.
"In 1957 or 1958, regular expenditures were made for the property from the budget of the Park and Recreation Board. A program of improvement was started, and a summer program with a director was conducted there, but weather conditions and flooding ended the program about 1965.
"At the time of the trial in O'Rorke, there was a cleared area containing playground equipment and a picnic area. The uncleared wooded area was said to be low, swampy, and full of snakes.
"The trial court denied O'Rorke's petition, and held that the ordinance adopted by the City of Homewood authorizing the conveyance of the property for the construction of a shopping mall was valid. On appeal, the Supreme Court of Alabama affirmed the trial court's decision. The Supreme Court's discussion of the evidence presented in that case with respect to the use of the property by the public is relevant to the issues presented here. The Supreme Court stated:
 "`The City did not dedicate the property as a park by ordinance. Prior to the beginning of the present controversy, the area was reduced from 15 acres to 7.63 acres by sales for an armory and highway right-of-way. Half of the remaining land is not usable for park purposes. The remainder was used by the public chiefly under a recreation program, but we are not convinced that such use amounts to a perpetual dedication of the property as a public park.
 "`Many of us can remember, in cities and towns with no organized recreation program, that vacant lots and tracts of land belonging to the municipality were used by the public for ball grounds, picnic grounds, public gatherings, political speakings and celebrations, but this use did not make the property public parks and most of those vacant lots are now used and occupied.'
[286 Ala. at 105, 237 So.2d at 492.]
"In the present case now before this Court neither the City of Vestavia Hills nor any other persons had made any improvements in the Subject Property. Other than evidence that a tent had been placed on part of the property, there was no evidence of any recreational equipment or facilities having ever been used on the Subject Property. The uses consisted of persons walking on the property, an occasional picnic on the same, and the setting up of a tent by the Graham children. This Court is not reasonably satisfied from the evidence of such use that the same was sufficient to constitute a common law acceptance by the public of the dedication before the same was revoked in 1976.
"Utz also argues that even if there was no acceptance of a common law dedication of the Subject Property, he is still entitled to prevail because the dedication made by members of the Pizitz family was complete as to the plaintiffs who are abutting owners and bought land in reliance on the offer to dedicate. Utz cites in support of this argument the decision of the Supreme Court of Florida in McCorquodale v. Keyton, 63 So.2d 906 (Fla. 1953). In that case, McCorquodale, the land developer, recorded a plat showing the property owned by him to be divided in lots and also showing on the plat an oceanside area bordering on the Gulf of Mexico which was set aside and dedicated as a park. McCorquodale later constructed a 12 ft. X 16 ft. building on that area and operated a business of selling sandwiches and cold drinks from the same. He later sold the building to J.N. Webb, who was operating the same business. Plaintiffs, consisting of a number of owners of lots in the subdivision, filed suit to enjoin the use of the property for purposes other than as a park as shown on the original plat. Upholding the right of the owners of lots, the Supreme Court of Florida concluded that they acquired a private easement in the park as purchasers of lots in the subdivision plat and that McCorquodale *Page 1387 
could not use the property for other than park purposes.
"In Allen v. Axford, 285 Ala. 251, 231 So.2d 122 (1969), the Supreme Court had also explained, `that where the owner of a tract of land adopts a general scheme for its development, divides it into lots, and conveys the lots with restrictions as to use, such restrictions create equitable easements in favor of the owners of the several lots which may be enforced in equity by any one of such owners.'
"In the present case, the Subject Property was not a part of the subdivision from which Utz and other plaintiffs purchased lots. The Subject Property was never shown on any plat of any subdivision as being set aside for park and recreation purposes.
"In Marengo Hills, Inc. v. Watson, 368 So.2d 856 (Ala. 1979), the Supreme Court stated that where a subdivision is developed in sections and each section is platted and recorded at different times, restrictive covenants for each particular section apply only to lots within that section. The Supreme Court stated that the owner of a lot in one section could not enforce restrictive covenants applicable to a lot in another section of the same subdivision.
"Since the Subject Property was not a part of the subdivision from which any of the plaintiffs purchased lots, the plaintiffs cannot as lot owners in the subdivision enforce the restrictions as to Subject Property placed on the deeds originally by members of the Pizitz family.
 "II. WHETHER THE CONVEYANCE BY THE CITY OF VESTAVIA HILLS TO THE VESTAVIA HILLS BOARD OF EDUCATION IS INVALID.
"Utz argues that the City of Vestavia Hills failed to comply with the provision of § 11-47-20, Ala. Code 1975, in connection with its conveyance of Subject Property to the Vestavia Hills Board of Education. That statute provides as follows:
 "`The governing body of any city or town in this state may, by ordinance to be entered on its minutes, direct the disposal of any real property not needed for public or municipal purposes and direct the mayor to make title thereto, and a conveyance made by the mayor in accordance with such ordinance invests the grantee with the title of the municipality.'
"The above statute has been construed by the Supreme Court of Alabama to require a finding in the ordinance authorizing the conveyance that the property to be conveyed is no longer needed for public purposes.
"In Jones v. City of Dothan, 375 So.2d 462 (Ala. 1979), Jones sought specific performance of a contract for the purchase of certain land owned by the City of Dothan saying that the Board of Commissioners at one of its regular meetings had agreed to sell the same to him. Affirming the decision of the trial court in favor of the City of Dothan, the Supreme Court held that the Board of Commissioners had failed to comply with the requirements of Section 11-47-20 because they had not made the necessary finding that the property was no longer needed for public purposes.
"In the present case, the City Council of Vestavia Hills failed to make a finding in its Resolution 416 that the Subject Property was no longer needed for public purposes. However, the ordinance did state that the property was being conveyed to the Board of Education for `public school purposes.'
"Counsel for Vestavia Hills and the Board say that the Jones
decision is distinguishable from the facts in this case. They say, first, that in Jones, supra, the Board of Commissioners of Dothan had decided they did not wish to sell the property to Jones and Jones was seeking to enforce the contract of sale, while in the present case, the conveyance by Vestavia Hills to the Board took place in 1975, over eleven years before Utz and the other plaintiffs sought to set aside the conveyance. Secondly, Vestavia Hills and the Board say that in the present case the ordinance adopted by Vestavia Hills authorized the conveyance to the Board `for public school purposes.' *Page 1388 
They argue that it would be superfluous to require a finding by the City Council of Vestavia Hills that the property was no longer needed for public purposes when it was being conveyed to the Board for a public purpose.
"Third, Vestavia Hills and the Board cite the decision inO'Rorke v. City of Homewood, supra, as authority for holding that a property not devoted to public use may be disposed of by the city without such required findings so long as the city is acting in good faith and without fraud. They say that in O'Rorke, the ordinance adopted by the City of Homewood is summarized and the required finding that the property was no longer needed for public purposes was not included.
"In O'Rorke, the Supreme Court referred to the ordinance adopted by Homewood as follows:
 "`(6) The major portion of the 7.63 acres is limited in its usefulness for a public park, recreation area, or any other municipal purpose, inasmuch as the same is subject to flooding and does flood extensively at periodic intervals.'
"While the Homewood ordinance as described by the Supreme Court did not find that the property was no longer needed for public purposes, it did state that the property was limited in its usefulness for public purposes because it was subject to periodic flooding. Such a statement could be considered by the Supreme Court as sufficient compliance with § 11-47-20.
"It appears to this Court that the occurrence which caused Utz and the other property owners to file this lawsuit was the notice dated October 25, 1985, received by them of the proposed rezoning of the subject property from R-2 to R-8 for the intended purpose of constructing townhouses. The notice stated that the proposed rezoning was requested by the Vestavia Hills Board of Education represented by its attorney, Pat Boone. However, Pat Boone testified that while he was then and is now the attorney for the Board of Education, he was never engaged or asked to apply for the rezoning of the Subject Property and no application for such rezoning was ever filed by him on behalf of the Board. The manner and circumstances under which the application for rezoning of the Subject Property was filed remains undetermined.
"However, it is questionable whether the language in Ordinance No. 416 adopted by Vestavia Hills authorizing the conveyance of the Subject Property to the Board of Education for public school purposes constitutes a legal restriction or limitation on the Board's right to dispose of the Subject Property.
"With respect to the lapse of time since the conveyance, no evidence has been presented of any intervening rights on the part of third parties, nor has any evidence been presented that the Board made any expenditures or changed its position in other manner to its detriment in reliance on its ownership of the Subject Property.
"This Court concludes that provisions of Section 11-47-20, Ala. Code 1975, are applicable to the conveyance of the Subject Property by Vestavia Hills to the Vestavia Hills Board of Education and required a finding by the City Council of Vestavia Hills that the Subject Property was no longer needed for public purposes. In the absence of such finding, the conveyance by Vestavia Hills to the Board of Education was invalid and due to be set aside.
"In accordance with this opinion, judgment is hereby rendered as follows:
"1. The prayer for relief by Utz that the Court declare the Subject Property subject to a trust that it be used, kept and owned as a park for the inhabitants of the City of Vestavia Hills, Alabama, is hereby denied.
"2. The alternative prayer by Utz and the other plaintiffs asking that this Court declare that the Subject Property remain subject to the restrictive provisions contained in the Pizitz deeds conveying the same to the city of Vestavia Hills is hereby denied.
"3. The prayer for relief by Utz and the other plaintiffs asking that this Court declare invalid the conveyance of the Subject Property made by the City of Vestavia Hills to the Board of Education of Vestavia *Page 1389 
Hills is hereby granted. The conveyance by the City of Vestavia Hills to the Board of Education of Vestavia Hills for the following described property is hereby vacated and set aside:
 "`Lots 3 and 4, Block 3, according to the survey of Shades Park, as recorded in Map Book 7, page 74, in the Probate Office of Jefferson County, Alabama;
 "`Parcel `C' according to a resurvey as recorded in Map Book 61, page 96, in the Probate Office of Jefferson County, Alabama, of Lots 2, 3 and 4, in Block 2, Shades Park.'
"4. Title in fee simple in and to the above described property is hereby vested in the City of Vestavia Hills, Alabama.
"All costs of court incurred in this proceeding are taxed against the defendants, the City of Vestavia Hills, Alabama, and the Board of Education of Vestavia Hills, Alabama.
"Done this 26 day of August, 1987.
"Marvin Cherner, Circuit Judge."
The judgment is affirmed.
87-85 AFFIRMED.
87-86 AFFIRMED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.
[1] "Isadore and Hortense Pizitz conveyed an undivided one-half interest in the Subject Property to the City of Vestavia Hills by deed executed December 28, 1962, and recorded in Deed Volume 6822, Page 152, in the Probate Office of Jefferson County, Alabama.
"Marcia Pruce and her husband, Arthur Pruce, and Ann Jacobson, and her husband, John Jacobson, conveyed an undivided one-half interest in the Subject Property to Isadore Pizitz by deed executed December 19, 1963, and recorded in Deed Volume 6943, Page 207. On that same day, December 19, 1963, Isadore and Hortense Pizitz executed a deed conveying the same undivided one-half interest in the Subject Property to the City of Vestavia Hills. That deed is recorded in Deed Volume 6943, Page 212.
"On September 17, 1973, a corrected deed was executed by Isadore and Hortense Pizitz for the purpose of correcting the legal description to that shown in this order. That deed is recorded in Real Volume 1001, Page 294."