This is an appeal from a judgment entered in favor of the Fort Payne Athletic Association, Inc. ("the Association") and 42 of its shareholders, and against the City of Fort Payne ("the City") and W.M. Beck, Sr., one of the Association's minority shareholders, in a declaratory judgment action. The Association and its majority shareholders brought this action seeking a declaration of their rights to dissolve the Association, and specifically a declaration that they had the right to sell the athletic field that is the Association's only asset and to distribute the proceeds. The City and Beck are attempting to prevent a sale of the field. The questions presented are: (1) whether the Association is a valid legal entity qualified to do business in Alabama; (2) whether the Association has retained ownership of the field or dedicated it to the City; (3) whether an unrecorded lease of the field from the Association to the City remains in effect; and (4) whether the Association is prohibited from selling the field and distributing the proceeds to its shareholders by Ala. Code 1975, § 10-3A-141(3).
The Association was incorporated in 1940. Its articles of incorporation included the following provisions in its statement of the Association's purposes and powers:
 "[T]his corporation is formed as an improvement association under the provisions of Sec. 7190 of the Code of Alabama, 1923, reserving to itself, however, all the rights and privileges of a private corporation, and the said corporation is formed for the improvement of the City of Fort Payne and surrounding territory.
". . . .
 "The nature of the corporation shall be an improvement association not for individual profit for the purpose of promoting athletics and entertainment.
". . . .
 "The objects of the corporation shall be to construct and maintain an athletic field and to promote athletic events, sporting events, entertainment and recreation of all kinds and to own real estate and sell stock for the purposes mentioned.
". . . .
 "The corporation shall have all the powers, rights and privileges of a private corporation, and shall power to own, buy and sell personal property.
It shall power of issuing shares of stock and selling, retiring, pledging, transferring and owning said stock. *Page 1262 
". . . .
 "It shall have and enjoy all the powers and rights conferred upon corporations by the statutory laws of the State of Alabama now or hereafter existing, and in particular the general powers of corporations enumerated and contained in Article 6, Chapter 274 of the Code of Alabama 1923, relating to corporations."
(Emphasis added.)
To raise the funds needed to accomplish its stated purposes, the Association sold shares of stock to Fort Payne residents, raising approximately $4,500. The Association used $2,500 of those funds to buy the property that is the subject of this dispute. After the property was obtained, members of the Association contributed material and labor to build the athletic field and managed it until 1950. At that time the Association did not have the financial resources to continue to maintain the field properly, and the directors decided to lease the field to the City. A lease was executed in 1950 for a 20-year term, with an option to renew for an additional 20 years. However, that lease was never recorded and none of the parties was able to produce the original lease or a copy of it. Although no evidence was produced that showed that the City exercised its renewal option upon the expiration of the original 20-year term in 1970, the City continued to use the field.
Initially, this action was brought by a group of minority stockholders against the Association. However, stockholders owning a majority of the Association's stock joined the original plaintiffs, and the Association was realigned as a party-plaintiff with the City and Beck as defendants. In 1989 the trial court issued an order, with detailed findings of fact, that resolved the disputes between the parties. The court held that the Association was a corporation in good standing; owned the athletic field in fee simple; and had the legal authority to sell the field and, upon dissolution of the corporation, to distribute the proceeds to its shareholders. The court denied the defendants' motion for a new trial, and the City and Beck appeal.[1]
The appellants argue that the corporation forfeited its existence by failing to hold annual meetings of the stockholders and of the board of directors for a number of years. However, Ala. Code 1975, § 10-3A-28(b), a section of the Alabama Nonprofit Corporation Act, provides:
 "An annual meeting of the members shall be held at such time as may be provided in the bylaws. Failure to hold the annual meeting at the designated time shall not work a forfeiture or dissolution of the corporation."
(Emphasis added.) In addition, noted authorities on the law of corporations have written:
 "The mere failure of a corporation to hold meetings, though the neglect has continued for a number of years, does not ipso facto work a dissolution of the corporation. . . ."
D. Nelson M. Wasiunec, 16A Fletcher Cyclopedia of the Law ofPrivate Corporations § 7996 at 65 (1988 rev.). The same authorities have noted:
 "The mere fact that a corporation has quit doing business does not necessarily constitute even a de facto dissolution, if it is still solvent and has not gone into liquidation.
 "A corporation, like an individual, may be in a state of suspended animation. Its functions may be in abeyance but nevertheless its existence as a corporation continues. . . ."
16A Fletcher, supra, § 7967 at 11.
Although the Association was quiescent for a long time, the evidence shows that it regularly paid franchise taxes and permit fees to the State and formally resumed active operations with a meeting of its shareholders on August 3, 1988, during which officers were elected and other business *Page 1263 
was transacted. For the reasons stated above, the trial court's ruling that the Association was a corporation in good standing is correct.
The deed by which the Association acquired the property contained no restrictions or limitations. Although the appellants do not dispute that the Association was the lawful owner of the property until 1950, they contend that the Association dedicated the field to the City during that year.
Dedications may be classified as either express or implied, and can be of either the statutory or the common law variety.Cottage Hill Land Corp. v. City of Mobile, 443 So.2d 1201, 1202
(Ala. 1983). Although statutory dedications are necessarily express, common law dedications may be either express or implied. 443 So.2d at 1203. In this case there was no evidence of a statutory dedication presented, and it appears that the appellants are arguing that the City obtained ownership of the property by an implied, common law dedication.
To constitute a dedication at common law, there must be an unequivocal intention on the part of the owner to dedicate the property and acceptance by the public or a person or body authorized to act on behalf of the public. Trustees of HowardCollege v. McNabb, 288 Ala. 564, 263 So.2d 664 (1972). Because the act of dedication is in the nature of a conveyance of title, it can be made only by the owner; the burden of proving it is a difficult one and it rests upon the party asserting the dedication. O'Rorke v. City of Homewood, 286 Ala. 99,237 So.2d 487 (1970). That burden can be met only by producing clear and cogent evidence showing a clear intention on the part of the owner, and the acts relied on to establish a dedication must be unequivocal in their indication of the owner's intention to create a public right exclusive of its own. Id.
The evidence presented by the appellants did not satisfy that burden. They relied on two acts to support their contention that the Association dedicated the property: (1) a speech by the mayor of Fort Payne in 1950, wherein he "dedicated" the athletic field to the children of the City; and (2) the leasing of the field to the City by the Association. Neither of those acts is sufficient evidence of a common law dedication. There was no evidence presented that showed that the mayor was authorized to speak for the Association; therefore his speech did not reflect an unequivocal intention on the part of the owner to dedicate the property. McNabb, supra. In addition, because a dedication is essentially a conveyance of title,O'Rorke, supra, the fact that the Association chose to lease the property, thereby retaining ownership, evidences an intent contrary to dedication. The trial court's ruling on this issue was correct.
The appellants also contend that the lease executed in 1950 for a 20-year term, with an option to renew for an additional 20-year term, is still in effect. However, that lease was never recorded. Ala. Code 1975, § 35-4-6 (Supp. 1989), states that leases that are not recorded within one year of their execution are not valid for more than 20 years. Therefore, the lease between the Association and the City was voided by operation of law in 1970 and does not stand as a bar to the Association's plan to sell the field.
Finally, the appellants argue that Ala. Code 1975, §10-3A-141, part of the Alabama Nonprofit Corporation Act, would prevent the Association from selling the field and would instead require it to transfer the field to an organization involved in substantially similar activities in the event of a corporate dissolution. That section is reproduced, in relevant part, below:
 "The assets of a corporation in the process of dissolution shall be applied and distributed as follows:
". . . .
 "(3) Assets received and held by the corporation subject to limitations permitting their use only for charitable, religious, eleemosynary, benevolent, educational or similar purposes, but not held upon a condition requiring return, transfer or conveyance by reason of the dissolution, shall be transferred or conveyed to one or more domestic or foreign *Page 1264 
corporations, societies or organizations engaged in activities substantially similar to those of the dissolving corporation, pursuant to a plan of distribution adopted as provided in this chapter. . . ."
(Emphasis added.)
The trial judge ruled that § 10-3A-141(3) did not apply in this case because the deed conveying the property to the Association did not contain conditions or limitations on the property's use. The trial judge also noted that the Association had reserved for itself all of the rights and privileges held by private corporations, including the right to buy, hold, and sell real property. Although there are no cases interpreting this Code section, the trial judge's interpretation is a logical construction of the language employed in §10-3A-141(3). In addition, § 10-3A-141(5) allows for assets that are not restricted by the terms of their conveyance or by the corporation's articles of incorporation to be distributed to "such persons, societies, organizations or domestic or foreign corporations, whether for profit or nonprofit, as may be specified in a plan of distribution adopted as provided in this chapter."
This Court agrees with the trial court's ruling that §10-3A-141(3) does not apply to the athletic field. The Association's deed conveying the property to the Association provided for fee simple ownership. Also, it is obvious that the Association's members took pains when drafting its articles of incorporation to ensure that they would not be hindered if they decided to dissolve the corporation and sell its assets.
For the reasons stated above, the trial court's ruling that the Association is free to adopt a plan of distribution, dissolve, and distribute to its shareholders the proceeds from a sale of the athletic field was correct, and the judgment of that court is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.
[1] In their brief the appellants set out 20 "Statements of Issues Presented for Review and Propositions of Law." However, the appellants do not point out how the majority of those issues and propositions relate to the facts of this case or how they demonstrate error by the trial court. Therefore, this Court will address only those issues that are directly related to the judgment from which the City and Beck appeal.