<hr/>

MISSOURI INSTITUTE FOR THE EDUCATION OF THE BLIND, Respondent, v. How *et al.*, Appellants.

1. A clear intention to dedicate is necessary to constitute a dedication of land to the public.
2. To authorize the presumption of an intention to dedicate land to the public as a street, there must be either an acquiescence by the owner for twenty years in the free use and enjoyment of such land as a public street, or such clear, unequivocal and decisive acts as will amount to an explicit manifestation of his will to make a permanent abandonment and dedication thereof to the public.

*Appeal from St. Louis Land Court.*

This was an action in the nature of an action of trespass *quære clausum fregit*, instituted September 26, 1856, to recover damages for an alleged wrongful entry upon certain

premises described as block No. 3 in N. P. Taylor's addition to St. Louis. The defendants, in their answer, pleaded, substantially, not guilty; that plaintiff had no property in the *locus in quo;* and that the premises were a part of a public street, dedicated to public use prior to the alleged trespass by plaintiff and those under whom he claims. The *gist* of the defence is that the public had a right of way over the premises.

The premises in controversy formerly belonged to William Christy. N. P. Taylor acquired title under said Christy in 1837. In the deed of said Christy the land conveyed was described as lot No. 29 in the " plan of apportionment" of his property among his children. Taylor subdivided said lot No. 29 into lots, and it formed part of " N. P. Taylor's addition to St. Louis." The said lot 29 was designated as block No. 3 in the plat of said partition. In 1838 Taylor conveyed said block to Ruland. Ruland dying in 1850, the title passed to his heirs, under whom the plaintiff acquired title through various mesne conveyances in the year 1854. When Ruland purchased in the year 1838, he took possession and made enclosures, but did not enclose the portion (about 25 feet) on the west side of the block, which is the subject of controversy in this suit. During the same year, Ruland employed Cozzens (a surveyor) to survey the property in order to ascertain its true location. Cozzens made the survey, and informed Ruland that his lot (block 3) extended about $24\frac{1}{2}$ feet further west than he (Ruland) had supposed or had enclosed. Ruland, however, thought he had enclosed the ground he had purchased from Taylor, but said he was entitled to 218 feet on Morgan street through to Franklin avenue. He insisted that he was entitled to 218 feet, and said that if any one claimed of him on the east, he should claim his quantity on the west. The same surveyor surveyed the premises again in 1846, with the same result. At the time Taylor laid out his addition, and up to the year 1856, the premises were without the limits of the city of St. Louis. At the time of the alleged trespass they were within said limits.

After the plaintiff acquired title, in the years 1855 and 1856, the plaintiff put up a new fence enclosing about 24 feet on the west that had not been previously enclosed. It is upon this piece of land that the defendants, How and Ruggles, entered, and removed this fence. Said How was, at the time, mayor of the city of St. Louis. Ruggles acted under and by orders of said mayor.

The deeds constituting plaintiffs' chain of title (executed by various parties since the death of Ruland) describe the property substantially alike, viz : As lots 1 to 14 inclusive, in block No. 3, in N. P. Taylor's addition, fronting 218 feet on Morgan street, extending to Franklin avenue, bounded north by Franklin avenue, east by Swearingen, south by Morgan street, *and west by Twentieth, sometimes called Nineteenth street.* When division was made among the children of Christy and when Taylor acquired title to lot 29 in 1837, there was no street named or known on the west side of said lot, nor did Taylor, in making or platting his addition, name or recognize any street on the west of his addition. There was evidence tending to show that there was a street thirty feet wide on the west side of said block No. 3. There was some evidence tending to show that the public had used the *locus in quo* as a public street or thoroughfare. The evidence on this point was conflicting.

The court, at the instance of plaintiff, gave the following instructions : " 1. Unless the jury find from the evidence that the present or former proprietor of the premises in question did some affirmative act showing an intention to dedicate the same to public use as a highway, then the said premises have not become a highway, and the public have not acquired the right of way over the same. 2. Although the jury may find from the evidence that the defendant John How, at the time of the alleged trespass, was mayor of the city of St. Louis, and acted in his official capacity as such mayor in all that he did in respect to entering the premises in question ; and although his co-defendant, in all that he did in respect to said premises, acted under and in obedience to

the orders and directions of said mayor, yet they are liable to this action if the plaintiff was in possession and the defendants entered upon said premises against the consent of the plaintiff and tore down and removed the fence, unless there was at the time of the alleged entry a public road, street or public way over said premises ; and the burthen of showing that there was such a public road, street or public way rests on the defendants."

At the instance of the defendants, the court gave the following : " 3. That if the fence erected by the plaintiff was located in a public street, then the defendant, John How, as mayor of the city, had a right to cause the same to be removed. 4. That if the jury believe from the evidence that General Ruland, or those who claim under him, dedicated the land, upon which plaintiff erected the fence, to the public use, they will find for the defendants. 5. That no particular form is necessary in the dedication of land to the public use ; all that is required is the assent of the owner of the land, and the fact of its being used for the public purposes intended by the persons so dedicating it. 6. That to determine whether or not Ruland, or any person claiming under him, ever assented to the dedication of Nineteenth alias Twentieth street to the public use, the jury have a right to take into consideration all the facts and circumstances of the case in proof. 7. In order to constitute trespass by the defendants, it is necessary that the plaintiffs show themselves in possession of the land west of the original fence made by Ruland ; and if the plaintiffs have failed to show title to the ground or possession of the ground west of the original fence, they will find for the defendants."

Defendants asked the following instructions, which were refused : " 1. If the jury believe from the evidence that Gen. Ruland caused lot No. 29 to be surveyed and directed the surveyor to commence in the centre of Twelfth street and run west, and caused the ground to be enclosed so as to embrace all he claimed of said lot, and that the fence removed by the authorities was outside of such survey and in a street

called and known as Twentieth, alias Nineteenth street, they will find for defendant. 2. If the jury believe from the evidence that the street in controversy was used by the public with the assent of General Ruland, and that the deed from Ruland's heirs to Greene's trustees, and from Greene's trustees to Greene, and the deed from Greene to Morrison, and from Morrison to plaintiff, calls for Twentieth alias Nineteenth street as a western boundary, then they are estopped and precluded from asserting any ownership to the ground, on which plaintiff erected the fence, inconsistent with the right of the public to use the same. 3. That if the jury believe from the evidence that General Ruland permitted the ground lying west of the west fence to be used by the public as a street or highway, and that the same has been since used as a public street or highway up to the time that the plaintiff erected a fence thereon, then it is such a dedication of the said ground to the public as to preclude the plaintiff from recovering in this action. 4. If the jury believe from the evidence that the ground on which the plaintiff erected a fence, the removal of which is alleged as a trespass, was used as a public highway, and had been previously used by the public as a street, and that the plaintiff erected a fence thereon, and that plaintiff had no possession of said ground until the erection of said fence, and that the city authorities immediately after the erection of said fence caused the same to be removed, then the possession of the plaintiff was not such a possession as will entitle them to recover in this action."

The jury found for the plaintiff.

*Bay*, for appellants.

I. The court erred in giving the first instruction in behalf of plaintiff. No particular form is required in dedicating a street or highway to the public use. A mere acquiescence in the use of the land by the public is sufficient to authorize a jury to presume a dedication. (Angell on Highways,

113; Gould v. Glass, 19 Barb. 195; Regina v. Petrie, 30 Eng. Law & Eq. R. 207; Jarvis v. Dean, 3 Bing. 417; Pritchard v. Atkinson, 4 N. H. 1; 11 East. 375; 6 Peters, 440.) The court also erred in refusing the instructions asked by the defendants.

*Krum & Harding,* for respondent.

Scott, Judge, delivered the opinion of the court.

The defendants have failed to establish any justification for the trespass with which they are charged. Their defence rested on the ground that there had been a dedication of the land to the public as a street.

The vital principle of a dedication is the intention to dedicate; and whenever this is unequivocally manifested, the dedication, so far as the owner of the soil is concerned, has been made. (Angell on Highways, 113.) When the proprietor of town property lays it out into lots, with streets and alleys intersecting it, and sells lots with reference to the plat in which the same is so laid off, he thereby dedicates the streets and alleys to the public. There is some contrariety of opinion as to the length of time the owner must acquiesce in the use of his property by the public before it can be said that he has made a dedication of it. In relation to this matter Chancellor Kent says, "If there be no other evidence of a grant or dedication than the presumption arising from the fact of acquiescence on the part of the owner in the free use and enjoyment of the way as a public road, the period of twenty years, applicable to incorporeal rights, would be required as being the usual and analogous period of limitation. But if there were clear, unequivocal and decisive acts of the owner, amounting to an explicit manifestation of his will to make a permanent abandonment and dedication of the land, those would be sufficient to establish the dedication within any intermediate period, and without any deed or other writing." (3 Kent Comm. 451.)

Angell, on the same subject, says, "In a recent American case, it was held that, without some clear and unequivocal manifestation of an intention to dedicate, dedication would not be presumed until after the lapse of twenty years; and this seems to be the view more generally taken by the American courts." (Angell on Highways, 116.)

The lot in controversy, it seems, was not made a part of the city until some time in 1856. It is not pretended that Ruland was a founder of cities, dedicating streets, alleys and public places with a view of enhancing the value of the rest of his property or to induce purchasers to buy. He owned but a single lot, measuring 218 feet on two streets, and of the depth of the block separating them. He had just purchased it. The land on his west was vacant and unenclosed. He had no need of an outlet. Such being the circumstances, more direct and positive evidence of facts manifesting an intention to dedicate are necessary. Strong evidence should be required to raise a presumption that the owner of a lot just purchased would abandon to the public more than one-ninth of it, when at the time there was no necessity for, nor policy in, such act. It would have been time to make the dedication when the relative situation of his lot required such an act for his own convenience. Ruland may have pointed out Nineteenth alias Twentieth street to Moulton. But, while doing this, he was claiming that the eastern boundary of his lot should be so projected, and it was in fact so projected, as to leave uncovered by his claim the ground now in controversy. A presumption is not easily indulged that a proprietor has abandoned that of which he is not aware that he is the owner. The idea of a dedication by Ruland is inconsistent with the testimony of Cozzens, a witness introduced by the defendant himself. The witness says Ruland always claimed 218 feet, the quantity he purchased. He told Ruland his eastern fence was not properly located. Ruland insisted that it was, and asserted that if he lost the ground on the east he would have his quantity on

the west. Ruland, while claiming on the east, could with no propriety assert any right to any unfenced land on the west; for the quantity to which he was entitled being definite, such a presumption would have weakened, if not destroyed, his claim on the east. If a proprietor is mistaken as to the location of his lot, and leaves a portion of it unenclosed, supposing that it is not covered by his claim, and afterwards ascertains his error, it would be hard in such a case to presume a dedication. In the case of Barraclough v. Johnson, 8 Ad. & Ellis, 99, Lord Denman said, "A dedication must be made with an intention to dedicate. The mere acting so as to lead persons into the supposition that the way is dedicated does not amount to a dedication, if there be an agreement which explains the transaction."

There is nothing in the record that warrants the supposition, nor is such a view of the case presented by any of the instructions, that Ruland really intended to give a street on the west, and only claimed on the east in the hope of obtaining an indemnity for what he had determined to relinquish for his own convenience on the west.

If we take the entire description of the lot as contained in the several deeds under which the plaintiff claims, we will find that it furnishes no evidence in support of the pretensions of the defendant. On the contrary, it shows that there was no intention on the part of the several grantors in those deeds to relinquish any part of the lot. The circumstances relied on to show an intent to dedicate is the call for a street on the west in the deeds. But that call does not show that it was the intention that the street should be opened by lay ing it out on a portion of the lot. The contrary is clearly manifest. All the deeds refer to a plan on record. That plan shows that Ruland's lot fronted 218 feet on Morgan street, and the same number on Franklin avenue. The space between these streets was divided by an alley, thus forming two lots, one fronting on Morgan street and the other on Franklin avenue. These two lots, having a front

each of two hundred and eighteen feet, were severally sub-divided into seven smaller lots—one with a front of 32 feet, and the rest with 31 feet each—making the aggregate 218 feet. By laying out the street on the lot, two of these smaller lots would be reduced into narrow slips not exceeding five or six feet in front. But it appears from the evidence that at the date of the deeds referred to, (for they were made after the death of Ruland,) there was a street west of the ground and adjoining it. This street was laid out by the commissioners appointed to make partition among the heirs of Wm. Christy, to whom the unenclosed land on the west belonged. The street laid out according to the plat was only 30 feet, but still it was sufficient to answer the call.

According to the principles stated in this opinion as derived from able commentators on our laws, it will not be necessary for us to determine whether acquiescence is a negative or affirmative act. The time relied on as raising a presumption of dedication from user is far short of twenty years, and there is no other circumstance in the case from which it would be warrantable to declare that there was a dedication within that period. There was no error in the first instruction given for the plaintiff, and there could have been but little cause of complaint had the law been as the defendant supposed when the instructions given on his behalf are considered in connexion with it. Notwithstanding the case of Regina v. Petrie, 30 Eng. Law & Eq. R. 217, Angell states the American law to be as it has been assumed in this opinion.

In the refusal to give the rejected instructions asked by the defendant, there is no error. The judgment is affirmed; the other judges concur.