SILAS ARMSTRONG *et al.* v. THE PORTSMOUTH BUILDING COMPANY *et al.*

No. 8533.

1. ESTOPPEL — *Construction of Deed.* Where the purpose of the grantor as expressed in his deed is to convey the land itself, and not merely his right, title and interest therein, and the grant is followed by a covenant of general warranty "against the lawful claim or claims of all persons whomsoever," such grantor, his heirs or assigns, are estopped from asserting an after-acquired title against the grantee, his heirs and assigns, although the deed does not in so many words purport to convey to the grantee "an indefeasible estate in fee simple absolute."

2. INJUNCTION — *Use of Property — Parties.* An owner of real estate in a city, neither contiguous to nor fronting on a lot dedicated on the town plat to church purposes, and such owner not being a member of the congregation holding services in the building erected on such lot, cannot maintain an action to enjoin and restrain the change of the use of such lot from pious to secular purposes.

*Error from Wyandotte District Court.*
*Hon. Henry L. Alden, Judge.*

AFFIRMED.                           OPINION FILED JUNE 6, 1896.

STATEMENT BY THE COURT.

SILAS ARMSTRONG, Joel Walker, W. Y. Roberts, Gaius Jenkins, John McAlpine, Thomas H. Swope, and Isaiah Walker, on December 9, 1856, entered into articles of association under the name and style of the Wyandotte City Association, for the purpose of pur-

chasing a certain portion of land at the confluence of the Missouri and Kansas rivers, as a town site. Silas Armstrong was elected president, W. Y. Roberts secretary, and Isaiah Walker treasurer of the association. On January 12, 1857, Hiram M. Northrup and wife conveyed to Gaius Jenkins, as trustee for said association, two certain tracts of land in section 10, township 11, range 25. On June 23, 1857, Gaius Jenkins, as trustee, and his wife, conveyed said land to John McAlpine, as trustee, for himself and his six associates by name. On June 26, 1857, said seven persons entered into articles of copartnership as to said land and the business of the association, and John McAlpine was thereby constituted trustee of the association, and authorized to receive the conveyances of lands in trust for the company, and to convey the same by its order. At the same time by-laws were enacted as to the manner of conducting the business of the association. On September 28, 1859, a resolution was adopted by the association authorizing the execution of deeds by John McAlpine, as trustee, to those holding certificates of shares in the association, and to acknowledge the regular plat of said city, and have the same filed and recorded ; and full power was conferred upon said John McAlpine, as trustee, to act instead of said associates, and generally to do and perform in their place, as trustee, all acts, matters and things necessary to the perfecting of the titles to said property. On the same day, said John McAlpine, as trustee, duly executed, acknowledged and filed a plat of the city of Wyandotte, including said lands, with a dedication of public grounds, part of the same being as follows : "Also Huron place, excepting a lot on the southwest corner, one on the southeast corner and also one on the northeast corner, which are respect-

ively 150 feet square, and dedicated to church pur-
poses. Also excepting so much as is occupied by the
Methodist Church, South, and by the burying-ground
adjoining said church as represented on the map."
Huron place, as described on the plat, is bounded on
the north by Minnesota avenue, on the south by Ann
avenue, on the east by Sixth street, and on the west
by Seventh street, and the property in controversy
was marked "church lot," the same being 150 feet
square, in the northeast corner of Huron place, being
at the southwest corner of Minnesota avenue and
Sixth street.

In 1868 the county commissioners desired to pur-
chase said property as a site for a court-house and jail,
and Isaiah Walker appeared before the county board
and offered said tract for $750. Thereupon the board
passed a resolution offering $700 for the same, and
the offer was accepted. Warrants were issued in the
name of the Wyandotte City Company aggregating
$700, and Isaiah Walker receipted for the same and
they were duly paid. On September 8, 1868, said
John McAlpine, as trustee for the Wyandotte City
Company, duly executed, acknowledged and delivered
to said board of county commissioners a deed for said
property. The following are extracts from said deed,
namely :

"Have granted, bargained, sold, aliened, enfeoffed,
released, and confirmed, and by these presents doth
grant, bargain, sell, alien, enfeoff, release and confirm
unto said commissioners, and to their successors and
assigns forever, the following lot,  .   .   .    together
with all and singular the buildings and improve-
ments, rights and liberties, privileges and appurte-
nances belonging or in anywise appertaining thereto ;
and also the reversions, remainders, rents, issues and
profits thereof, and all the right, title and interest of

said John McAlpine, trustee aforesaid, in and to the same, or any part thereof. . . . And the said John McAlpine, trustee aforesaid, doth hereby covenant with the said commissioners, and their successors and assigns, that the said premises are free and clear from all incumbrances done or suffered to be done by or through him whatever, and that the said Wyandotte City Company will forever warrant and defend the same unto the said commissioners and their successors and assigns, against the lawful claim or claims of all persons whomsoever.''

On February 21, 1882, the First Presbyterian Church of Wyandotte commenced an action against said board of county commissioners, praying that said deed be declared null and void as against its rights, and that the county board hold the title to said lot in trust for said church. Judgment was obtained by the church substantially in accordance with the prayer of its petition, and said judgment was affirmed by this court. ( 30 Kan. 620.) A church building was erected on said lot, fronting on Sixth street, and the congregation continued to worship there until 1888. By that time two double-track street-railways had been constructed, one on Minnesota avenue and the other on Sixth street, the latter having made an excavation about 15 feet in depth in front of the church building, and the use of the property for church purposes was rendered undesirable. On April 11, 1888, the church and O. S. Bartlett filed a petition against the board of county commissioners, reciting the foregoing facts as to the use of said property, and stating that said Bartlett had entered into an agreement with the church for the purchase of said premises for the sum of $50,-000, and asking that the church be allowed to make such sale and to invest the proceeds in another site and to erect a church building thereon. And on May

12. 1888, a decree was entered in said case allowing such sale on condition that the trustees of the church should give bond in the sum of $60,000, with good and sufficient sureties, conditioned that they would honestly apply the proceeds of the sale of said premises in accordance with the directions of the decree, and such other directions as might in the future be made by the court. The bond was given accordingly and its conditions were fulfilled. Bartlett paid the $50,000, and the trustees purchased another site and erected a large church edifice thereon, at a cost of about $60,000, within the limits of Wyandotte city. The county commissioners executed a deed to the church, and the church conveyed to Bartlett, and by mesne conveyances the title of Bartlett was vested in the Portsmouth Building Company, which was excavating for a foundation of a large office building upon said premises when this action was commenced by Silas Armstrong and others, claiming to represent the Wyandotte City Company, for the recovery of said premises, and also to prevent the same from being employed for secular uses. The cause was tried at the June term, 1891, before the court, and judgment was rendered in favor of the defendants. The plaintiffs bring the case to this court for review.

*L. F. Bird*, for plaintiffs in error.

*Cook & Gossett*, for defendant in error The Portsmouth Building Company.

*Mills, Smith & Hobbs*, for defendant in error The First Presbyterian Church.

The opinion of the court was delivered by

MARTIN, C. J. : I. Sections 1 and 6 of chapter 78, General Statutes of 1889, relating to plats of cities and

towns, have been in force substantially in the same
form ever since 1855, and the main contention of the
plaintiffs is that by the filing of the plat the lot in con-
troversy was conveyed to the county in trust for the
use of a church, " and for no other use or purpose,"
and that on the cessation of its use for church purposes
the title reverted to the original proprietors, their
heirs and grantees.   It may be doubted whether, under
a statutory dedication like this, the property would
revert upon the abandonment of the use as upon the
failure of a condition subsequent in a deed ; but, as-
suming that a possibility of revertor exists in such
case, we are of opinion that the plaintiffs are es-
topped by their deed of September 8, 1868, to the
board of county commissioners from setting up a title
in themselves.   True, the deed does not in so many
words purport " to convey to the grantee an indefeasi-
ble estate in fee simple absolute," as expressed in sec-
tion 5 of the act relating to conveyances (¶ 1114,
Gen. Stat. 1889) ; but it manifests the purpose of the
Wyandotte City Company through its trustee to grant,
bargain, sell, alien, enfeoff, release and confirm the
lot unto said commissioners and to their successors
and assigns forever, together with the remainders,
rents, issues and profits thereof, and all the right, title
and interest of John McAlpine, trustee, in and to
the same.   The trustee then makes a special covenant
against incumbrances created by himself, and the
deed concludes with a covenant of general warranty
of the company against the lawful claim or claims of
all persons whomsoever.

Where the evident intent of the grantor is to con-
vey the entire estate, it is a familiar principle that a

covenant of general warranty estops him
and his heirs and assigns from asserting
an after-acquired title. (Rawle, Cov. Title,
4th ed., 404.)   Conceding that the cove-

1. Estopped
by covenant
of general
warranty.

nant of warranty is coextensive only with the grant,
and is to be construed with reference to its limitations,
and when the deed does not purport to convey the
land itself, but only the grantor's right, title and in-
terest therein, the grantee is not estopped from setting
up an after-acquired title, yet the plaintiffs' claim is
not established, for the Wyandotte City Company
grants the lot described without any qualification,
whatever may be said of the grant and the covenant
of the trustee in his own behalf.   In *Smith v. Will-
iams*, 44 Mich. 240, 242, Mr. Justice Cooley, deliver-
ing the opinion of the court, said :

" Where one assumes by his deed to convey a title,
and by any form of assurance obligates himself to
protect the grantee in the enjoyment of that which
the deed purports to give him, he will not be suffered
afterwards to acquire or assert a title, and turn his
grantee over to a suit upon his covenants for redress.
The short and effectual method of redress is to deny
him the liberty of setting up his after-acquired title as
against his previous conveyance.   This is merely re-
fusing him the countenance and assistance of the
courts in breaking the assurance which his covenants
have given."

The plaintiffs question the right of John McAlpine
to execute the deed to the county commissioners, but
we think that by the articles of copartnership of June
26, 1857, he was authorized to convey the lands when-
ever ordered by the association ; and it fully appears
that this deed was executed by him by direction of
the association and for a valuable consideration paid

to its treasurer.    If, therefore, the lot would have reverted to the original proprietors on the abandonment of its use for church purposes, we hold that they and their grantees are estopped by said deed from setting up any claim of title against the grantees of the county commissioners.

II.  The plaintiffs alleged that they owned property within the limits of the original city of Wyandotte other than that in controversy, and that they were entitled to the privileges and benefits of all the streets, alleys, public grounds and church lots in said city as marked and designated on the recorded plat, and to have the property in controversy used for church purposes only, and ought to have an injunction prohibiting its use for any other purpose.    On the trial they offered to show that three of their number owned property within the original city limits other than that in controversy.    It was not claimed that any of the plaintiffs owned property contiguous to or fronting on the church lot, nor that any one of them was a member of the Presbyterian congregation, or an attendant upon the services of that church.    A long line of decisions, commencing with *Craft v. Jackson Co.*, 5 Kan. 518, has established the principle in this state that a private person cannot maintain an action to redress a grievance common in its nature, unless the act complained of produces some peculiar damage to his individual interests or affects his rights in a different manner from those of other members of the community, and this branch of the case falls within that principle.    If the plaintiffs owned property contiguous to or fronting on the church lot, and such property would be injured or depreciated in value by the secularization of the church property, they might be in a position to ask relief

*2. Injunction
—use of
property.*

against a change in its use, as in *Comm'rs of Franklin Co. v. Lathrop*, 9 Kan. 453 ; or if they were members of the congregation holding its services in the building erected on said church lot, and would suffer injury by a change of the use of the lot from pious to secular purposes, perhaps they might have a standing in court under *Feizel v. Trustees of German M. E. Society*, 9 Kan. 592, 596. This case, however, does not come within either principle. *Heller v. A. T. & S. F. Rld. Co.*, 28 Kan. 625, and *Billard v. Erhart*, 35 id. 611, follow the line of reasoning adopted in *Craft v. Jackson Co.*, supra, and under their authority the plaintiffs have no standing in court to enjoin and restrain the change of the use of the property from pious to secular purposes.

The judgment of the court below must be affirmed.

All the Justices concurring.