Herbert **HINTON**, et al., **Appellant,**

v.

**CITY OF ST. JOSEPH, MO., Trustees of George Bode, Jr. Benevolent Trust, Wal–Mart Stores, Inc., Respondents.**

No. WD 48479.

Missouri Court of Appeals,
Western District.

Oct. 11, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 29, 1994.

Application to Transfer Denied
Jan. 24, 1995.

---

Leonard J. Johnson, Kansas City, for appellant.

John D. Boeh, St. Joseph, Ronald E. Taylor, Agency, John R. Cleary, Kansas City, for respondents.

Before SMART, P.J., and LOWENSTEIN and HANNA, JJ.

SMART, Presiding Judge.

This appeal arises from the dismissal of an action brought by neighbors of a tract of ground against the City of St. Joseph and the trustees of a benevolent trust to prohibit the sale and development of the tract. Plaintiffs Steven and Rebecca Steele, Elvin and Louann Murphy, Herbert Hinton and Missouri Associates, L.P. contend that the land in question was irrevocably dedicated to the city for park and recreational purposes, and that the city is foreclosed from allowing any other disposition of the property. The trial court dismissed the action for failure to state a cause of action. Plaintiffs appeal.

On April 26, 1945, George Bode, Jr., a former resident of St. Joseph, executed a will specifically devising his entire residuary estate in trust for the use and benefit of the citizens of St. Joseph. Bode's will provided for creation of a trust and directed the trustees to use the trust estate to acquire land within the city as sites and locations for "public parks, playgrounds, athletic fields, including baseball diamonds and grounds, tennis courts, and a zoological garden, if financially possible." The will directed the trustees to transfer to the city any property acquired by the trust subject to the following conditions:

(1) that the city or public agency accepting the conveyance shall make the improvements necessary to carry out the purpose or purposes for which the conveyance is made and will adequately maintain the property for such purpose or purposes.

(2) that the property and the facilities thereof and thereon shall at all times be equally open and available to all citizens of St. Joseph, without regard to creed or denomination.

(3) that the property shall not be used for any political, religious, or sectarian purpose.

(4) that the property be dedicated in the name of either BODE or my mother's maiden name, WENZ.

On December 22, 1970, the City of St. Joseph accepted a conveyance of a 30 acre tract of land (referred to herein for convenience as the "Bode tract") from the Bode trust by a special ordinance, which recited that the trustees would convey the land subject to the conditions imposed by the will and that the city would accept the land for recreational purposes subject to those conditions. Thereafter, the deed was executed and the deed and ordinance were recorded.

Before 1992, the individual plaintiffs purchased property within the city in close proximity to the 30 acre tract. Some plaintiffs claim that in making the purchases they relied on information that the land could lawfully be used only for park or recreational purposes. From 1970 to 1992, the city held title to the tract of land, but did not develop the land in any way. On June 18, 1992, the city council enacted an emergency special ordinance, which purported to authorize and effect the conveyance of the tract back to the trustees of the Bode trust with the restriction that any proceeds derived by the trust from the sale of the property would ultimately be used for future city parks and recreation purposes. It was understood that the trustees desired to sell the land to Wal–Mart Stores, Inc., and to use the proceeds from the sale to develop park facilities elsewhere in the city.

On September 28, 1992, the city council approved a recommendation of the City Planning Commission that the Bode tract be rezoned from residential to commercial use. On October 7, 1992, the trustees of the Bode trust executed a deed purporting to convey

the land to Wal–Mart, to be used for the development of a large retail store. Plaintiffs commenced this action in November 1992. In March 1993, defendants filed motions to dismiss the petition. On April 1, 1993, during a hearing on the motions to dismiss, plaintiffs obtained leave to file a first amended petition. After hearing arguments on the motions to dismiss, the trial court entered an order dismissing the first amended petition. On April 12, plaintiffs filed a motion for reconsideration and for leave to file a second amended petition, which was denied by the trial court on April 12, 1993. After twice dismissing appeals on the ground that the notice of appeal had not been timely filed, this court granted plaintiffs' motion to file an appeal out of time.

Plaintiffs now contend, *inter alia*, that the trial court erred in dismissing their petition for failure to state a claim upon which relief may be granted. The trial court held that the facts as recited in plaintiffs' petition show that the city abandoned the proposed dedicated use of the property, requiring the reversion of the property to the dedicator. Therefore, the trial court reasoned, the transfer of the property back to the trust by the city was not improper.

We begin our analysis by considering the contention of respondents that plaintiffs lacked standing in the trial court and continue to lack it in this court to challenge the transfer of the property. Plaintiffs contended that they had standing to bring this action on two bases: 1) they claim that all plaintiffs have standing as taxpayers to challenge the improper handling of public property; and 2) they claim that the individual defendants have standing as owners of property located near the tract of land because their enjoyment of their property, and the value of their property, will be adversely affected by the development.[1]

■ In determining the issues related to standing, we will consider not only plaintiffs' petition but also the additional non-contested facts which all parties accepted as true at the time of argument on the motion to dismiss. Thus, we will engage in a summary judgment mode of analysis, seeking to determine whether the issue of standing is resolved as a matter of law on the basis of the undisputed facts. The issue of standing may be raised at any time and may be reviewed by the court *sua sponte*. *Gowen v. Cote*, 875 S.W.2d 637, 639 (Mo.App.1994).

### Taxpayer Standing

■ In examining the issue of the standing of plaintiffs, we first evaluate the claim of taxpayer standing. In order to claim the benefit of taxpayer standing, plaintiffs must be able "to demonstrate a direct expenditure of funds generated through taxation, or an increased levy in taxes, or a pecuniary loss attributable to the challenged transaction of a municipality," absent fraud or other compelling circumstances. *Eastern Missouri Laborers Dist. Council v. St. Louis County*, 781 S.W.2d 43, 47 (Mo. banc 1989). Plaintiffs claim that public funds do not have to be expended to have taxpayer standing, citing *Hight v. City of Harrisonville*, 328 Mo. 549, 41 S.W.2d 155 (1931), because they have an equitable ownership interest not only in public funds, but also in "other public property." In *Hight*, the Missouri Supreme Court found that plaintiffs had an equitable interest in the city's electric distribution system which conferred taxpayer standing on them. 41 S.W.2d at 158. However, this court disavowed *Hight* in *J.C. Nichols Co. v. City of Kansas City*, 639 S.W.2d 886, 888 (Mo.App. 1982), stating:

> *Hight* is the only case to which plaintiffs direct us in support of their contention that an expenditure of public funds is not necessary for taxpayer standing. Howev-

---

1. Missouri Associates, L.P., is not an owner of land in the neighborhood of the tract in question. Instead, this plaintiff is the owner of the land and building previously occupied by Wal–Mart. This plaintiff's interest is in blocking the opportunity for Wal–Mart to operate on the "Bode tract" so that the likelihood of future Wal–Mart leases on its own land is enhanced for this plaintiff. Missouri Associates, L.P., claims standing only as a taxpayer. Therefore, if there is no taxpayer standing generally, this plaintiff will lack standing to maintain an action. The fact that the operation of a Wal–Mart store on the "Bode tract" may diminish the opportunities for Missouri Associates to lease property in the future does not convey standing because the injury in such case would be of no different character than that of other potential landlords.

er, Missouri law on this point has evolved beyond that 1931 case.

By contrasting two similar cases, we can see that the movement toward permitting standing in the absence of proof of an illegal expenditure of public funds was short-lived. In *Civic League of St. Louis v. City of St. Louis*, 223 S.W. 891 (Mo. 1920), plaintiffs had been permitted to bring an action to enjoin fiscal officers from paying the salary of the superintendent of excavations based on their allegation that the office was illegally held. However, nineteen years later in *Smith v. Hendricks*, 136 S.W.2d 449 (Mo.App.1939), on very similar facts where plaintiffs sought to enjoin the continued employment of a bus driver alleged to be unqualified for the position, the court interpreted *Newmeyer* to permit standing only where the tax burden would be increased, and held that because it would cost as much to hire a qualified driver as an unqualified one, the taxpayers lacked standing. Instead, where the tax burden is not increased, the court held at 454 that "the remedy is the elective franchise."

The Missouri Supreme Court, in 1989, redefined its position in *Eastern Missouri Laborers*, appearing to take a position consistent with *J.C. Nichols Co.*:

Absent fraud or other compelling circumstances, to have standing a taxpayer must be able to demonstrate a direct expenditure of funds generated through taxation, or an increased levy in taxes, or a pecuniary loss attributable to the challenged transaction of a municipality.

781 S.W.2d at 47. The court also, in *Harris v. Missouri Gaming Commission*, 869 S.W.2d 58 (Mo. banc 1994), found that a taxpayer had pleaded facts amounting to standing by alleging that the implementation of riverboat gambling regulations would require the direct expenditure of public funds. Here, there is no illegal expenditure of public funds shown. Nor is there any reason to believe taxes will be increased by virtue of this transaction. Rather, it is admitted by all that the funds generated from the sale of the property to Wal–Mart will result in increased funds for public uses in view of the increased funds available to the trust. In accordance with *Eastern Missouri Laborers*, plaintiffs have failed to prove taxpayer standing.

### Nearby Property Owner Standing

█ We next examine the issue of the standing of the individual plaintiffs as nearby property owners. The purpose of the doctrine of standing to sue is to ensure that litigation is brought only by appropriate parties having a present, substantial interest in the outcome. 59 Am.Jur.2d *Parties* § 30 (1987). The concept of standing also serves the function of promoting an efficient allocation of access to scarce judicial resources. *Id.* Generally, an individual does not have standing to seek redress of a public wrong, or of a breach of public duty, if such individual's interest does not differ from that of the public generally, even though the complainant's loss is greater in degree than that of other members of the public. 59 Am.Jur.2d *Parties* § 33 (1987). We note also in passing that charitable trusts are generally not enforceable by potential beneficiaries or by members of the general public. *Dickey v. Volker*, 321 Mo. 235, 11 S.W.2d 278 (1928), *cert. denied*, 279 U.S. 839, 49 S.Ct. 252, 73 L.Ed. 986 (1929); *see also* IVA A. Scott and W. Fratcher, Scott on Trusts § 391 (1989). The proper party to enforce the interests of the general public with regard to a charitable trust is generally the state attorney general. IVA A. Scott and W. Fratcher, Scott on Trusts § 391 (1989).

Here, these individual plaintiffs, whose land does not adjoin the tract in question, claim standing based upon the fact that their properties are located within one-quarter mile and within sight of the boundary of the tract. The issue is whether these plaintiffs have a legally protectible interest at stake. *Gowen v. Cote*, 875 S.W.2d 637, 640 (Mo.App. 1994). The trial court in this case ruled that, while the plaintiffs did not have taxpayer standing, the court would allow them standing on the ground that they claim that they would be directly and adversely affected by the commercial development of the property in that they would be caused to suffer excess noise, increased pollution, traffic congestion, loss of property value, and loss of enjoyment

of their property. Plaintiffs express the same kind of interest they would express in challenging a zoning proposal.[2] Here, however, they base their petition on the terms of a purported dedication of land which has already been reversed by the dedicator and the city.

In the ordinary dedication, the dedicator or one claiming under the dedicator has full dominion and control over the dedicated property, subject to the easement in the public, and may bring an action to enforce the uses for which the dedication was made and to prevent a diversion therefrom, or to otherwise prevent interference therewith. The traditional rule is that no person other than the attorney general or the dedicator (or one claiming under the dedicator) may challenge the diversion of dedicated property unless the claimant has a substantial special injury, usually an economic injury, which warrants allowing that person standing to enforce the dedication. 23 Am. Jur.2d *Dedication* § 71 (1983). Thus, a home owner and resident of a city lacks standing to object when a church which owns property irrevocably dedicated to church purposes proposes to sell the land to the county to allow the county to construct a courthouse and jail on the property. *Armstrong v. Portsmouth Bldg. Co.*, 57 Kan. 62, 45 P. 67 (1896). Similarly, a home owner residing near, but not owning property in, a subdivision containing a park which was dedicated as a park in the plat of the subdivision, should be held to lack standing to object when the developer and the lot owners within the subdivision choose to do something else with the park land. *Owens v. Elliott*, 257 N.C. 250, 125 S.E.2d 589 (1962) (purchaser of land outside subdivision had no enforceable rights with respect to dedicated streets of subdivision).

Plaintiffs here are not members of a subdivision seeking to enforce a subdivision dedication or a restrictive covenant adopted specifically for the benefit of owners of land in the subdivision. *See Gowen v. Cote*, 875 S.W.2d 637 (Mo.App.1994) (owners of land in the subdivision entitled to enforce restrictive covenant). Here, the dedication was not for the purpose of benefiting residents of plaintiffs' neighborhood. Rather, the dedication was specifically for the general citizenry of St. Joseph. As citizens, plaintiffs have no greater enforcement rights than any other citizen.

The relief sought by plaintiffs in this case is the invalidation of the transfer to Wal-Mart and the reversal of the rezoning from residential to commercial. Plaintiffs desire, in effect, a return to the prior status—one in which the city simply holds the 30 acres, and does not develop it. Such an objective is contrary to the purposes of the proposed dedication. The city could, within the purposes of the proposed dedication, construct a complex of stadiums and athletic fields, or a zoo, or a community center, or bowling alleys and skating rinks, and so on. The proposed dedication was conditioned upon the city developing the property for recreational purposes. The trustees have already elected not to compel the city to develop facilities on this land. Instead, the trustees have accepted a reconveyance of the tract in order to sell it and apply the proceeds to develop recreational facilities elsewhere in the city. These plaintiffs, in contrast, have no interest in compelling development of recreational facilities, either on the tract in question or elsewhere. Their desire is to forestall development. They seek simply the invalidation of the conveyance to Wal-Mart, and an order reversing the zoning decision. The result they seek, the continuation of the status of undeveloped land, does not correspond to the purpose of the proposed dedication in the first place. Thus, plaintiffs' interests do not correspond to those of the general public.

As for plaintiffs' special injury, plaintiffs claim that they are near neighbors, residing within one-quarter mile of the 30 acre tract. They also claim that they can see the tract from their property. Their concerns are the kinds of concerns commonly addressed in zoning decisions. There is no financial interest claimed other than the assertion that development of the land may affect their property values. Even assuming, for pur-

---

2. Plaintiffs, of course, had the right to present their grievances before the zoning authorities and the city council. The record before us does not reveal whether they did so.

poses of our analysis, that plaintiffs' property value will be affected, there is no suggestion that plaintiffs' property values will suffer substantially more than other home owners in the near vicinity of the park. This is not like a case which would exist if plaintiffs had built a substantial business operation on their land in reliance upon the dedication, the success of which was wholly dependent on the tract in question becoming and remaining a park.

It appears that there was an acceptance of the dedication[3] by virtue of the city's ordinance purporting to accept the property, and that a right vested in the general public as well as in the dedicator. Nevertheless, we conclude that these plaintiffs do not represent the interests of the general public as against the trustees, who, as the dedicators, more nearly represent the interests of the public. This case is thus distinguishable from cases in which the citizen-plaintiffs were acting in the interest of the general public. For example, in *Parsons v. Walker*, 28 Ill.App.3d 517, 328 N.E.2d 920 (1975), the issue was the standing of some private citizens to bring an action to preserve a park, which had been deeded in trust to the University of Illinois and operated as a park for 28 years. The court there found that there was a public trust in the park which individual citizens and taxpayers had an interest in preserving and standing to do so in the court. This case is more like *Calkins v. Westervelt*, 214 F. 415 (W.D.Mich.1913). In that case, suit was brought by two owners of land in a development on the shore of Lake Michigan. At the time each plaintiff bought a lot and built a summer cottage, the plat showed that a portion of the land was reserved for park purposes. The developer's successor, The Macatawa Park Company, later conveyed a tract of land to defendant by unrecorded deed, and then purported to sell the same land again to Macatawa Resort Company. The land allegedly sold to defendant was located in the tract reserved for park purposes, and defendant proposed to build upon a portion of the land. Plaintiffs sued to invalidate the deed which purported to transfer the property to defendant. The court in that case stated:

> If the deed from the Macatawa Park Company to defendant be set aside, the title to the parcel of land in controversy will thereby be revested either in the municipality within whose territory it is located or in the present owner of the unsold portions of Macatawa Park, the Macatawa Resort Company. But neither the municipality or the resort company is a party to this suit ... complainants do not pretend to represent either the public or the alleged owner of the land, and have no such personal interest therein as will entitle them to relief on their own behalf.

*Calkins*, 214 F. at 417. The court noted that the plaintiffs had no appurtenant rights in and to the parks and no rights of any kind except as are common to all property owners in that vicinity. The plaintiffs' suit was dismissed for lack of standing. *Calkins*, 214 F. at 418.

In this case, as in *Calkins*, the plaintiffs represent neither the general public nor the dedicator. They do not have appurtenant rights to this land. A colorable claim of standing will be defeated where the individual or entity having greater privity and standing does not join in the attempted enforcement. In the case before us, the dedicator,

---

3. Acceptance may be formal in nature (as in this case where an ordinance was passed by the city) or inferred from general use by the public, including improvement and repair by public authorities. 2 G. Thompson, Thompson on Real Property § 370 (1980). Where one of the conditions of the dedication is development by the city, and the city wholly fails, over a period of twenty years, to take any steps to develop or maintain the property, it is arguable that there never was a true acceptance of the dedication by the public. In the absence of a formal acceptance by city ordinance, where there has been no development of the land as a park, and any use of the land is only occasional, there being nothing to identify it as a park, there is no public acceptance of the dedication. *Vestavia Hills Bd. of Educ. v. Utz*, 530 So.2d 1378 (Ala.1988) (occasional use of land by children, hikers, and bird watchers did not by itself constitute an acceptance of the dedication as a park). Perhaps, even where there *has* been a formal acceptance by city ordinance, it could be argued that the formal acceptance of a conditional grant is not complete without performance of the conditions and without public user. Because we resolve this case on the issue of standing, we do not reach that issue.

which was in privity with the city, declined to enforce the dedication in the way these neighbors would have liked, and instead chose to accept a reversion of the land. The trustees, because of their duty to serve the interests of the general citizenry of St. Joseph, more nearly represent the public interest than do these plaintiffs. While in this case plaintiffs may purport to act in the interest of the general public, the nature of their claim and the relief they seek shows that they are seeking to protect their own unique individual interest, which the public does not share generally. Their right is based on their claim to special injury. But their "special" injury differs only in degree, not in quality or substance, from the injury which could be asserted by others living in the same general vicinity. We hold that their claimed special injury is not of such a character as would justify a grant of standing.[4] Plaintiffs have not shown a sufficient justiciable interest to justify their right to bring an action in this matter.

The trustees, of course, had standing to compel the city to accept and implement the dedication. *Lackland v. Walker*, 151 Mo. 210, 52 S.W. 414 (1899). So, presumably, would neighboring landowners have had standing all these twenty years to sue to enforce the dedication, if they had done so in the public interest.[5] Now, however, the trustees have elected instead to accept the return of the property. The trustees desire to employ the proceeds of the sale to develop recreational facilities elsewhere for the benefit of the citizens of St. Joseph, all in keeping with the purposes of the benevolent trust. Under these circumstances, it would be odd for the law to permit these plaintiffs, who were not privy to this transaction in the first

place, and who never obtained a vested interest in the proposed dedication, to invalidate the transfer of the property back to the dedicating party. To do so would be to allow these plaintiffs, who represent their own interests, a veto power over the efforts of the dedicator to enforce its rights to provide for benefits to the general public.

If the plaintiffs in fact represented the interests of the general public, and if the dedicator had not already taken action to enforce its rights, plaintiffs would have a stronger case that they must be allowed standing. We hold only that, because the dedicator has acted to enforce its rights, and because its actions are consistent with the interests of the general public, the plaintiffs have no standing under the facts of this case to challenge the disposition which has been made.

*Conclusion*

Plaintiffs' grievance here is not the failure of the city to comply with the proposed dedication in developing the land. Rather, their grievance is the decision of the city and of the trustees of the Bode trust to return the property to the trust, and allow the sale of the property to a party intending a commercial usage. The plaintiffs do not have taxpayer standing to challenge the transaction. Nor can they purport to act in the interests of the general citizenry of the city of St. Joseph. Nor do they have a vested legally cognizable individual interest in the enforcement of the purported dedication. Plaintiffs-appellants lack standing to maintain this appeal. Appeal dismissed.

**4.** The fact that the neighbors may have relied upon an understanding gained from city officials that the land could be used only as a park does not assist them. The city is not estopped by virtue of the legal opinions expressed by its officers. *See* 31 C.J.S. *Estoppel* § 138 (1964). Moreover, it is not technically true that the land could have been used only as a grassy park. The land could also have been used for various recreational projects and facilities.

**5.** The dissent incorrectly concludes that this opinion holds that these plaintiffs would not have been permitted to sue in behalf of the public to

enforce the dedication. This opinion holds that they cannot sue to advance their own interests when the dedicator, whose interests coincide with those of the general public, has already taken action to enforce the public interest. In any event, whether or not the plaintiffs have standing, there is no need for a remand of the case. The trial court allowed standing to the plaintiffs and proceeded to resolve the case on the merits. If the plaintiffs do in fact have standing to maintain the appeal, the only thing remaining would be to affirm or reverse the decision of the trial court on the merits.

HANNA, J., concurs.

LOWENSTEIN, J., dissents in separate opinion.

LOWENSTEIN, Judge, dissenting.

I respectfully dissent. I believe the court's decision on the standing issue creates a situation where no plaintiff, other than the attorney general, could bring any type of suit to question the actions of the municipality or the charitable trust. There are two causes here: the plaintiffs versus the city, and the plaintiffs versus the trustees. Wal–Mart is only in this suit for declaratory judgment because the cause of action involves real property it now owns. Rule 87.04.

The ample case law cited in the majority establishes that the attorney general must be a party in a suit involving a charitable trust. The Bode Trust is a charitable trust. The failure to have the attorney general in this case affects only relief sought by the petition against the trust, and in no way has an effect on the plaintiff's cause against the city. It is the plaintiffs versus the city that is the heart of the case.

Before addressing the relief sought against the city, and the plaintiffs' standing to bring the suit, it must be noted that at no time during the transfer of the property from the city to the trust, and then to Wal–Mart, was the attorney general made privy to any change in use of the thirty acre trust property. The property given by the charitable trust to the city in 1970 could still have been used as a park. There was no impossibility of carrying out the trustor's intent or invocation of the *cy pres* doctrine—the only change was that the land had grown in value and a decision was made to sell and use the proceeds for another piece of property. If, as the majority states, the attorney general should have been made a party in this suit against the trustees, then the same should have been said for the 1992 decisions and actions which gave rise to the case at bar. See: *Pilgrim Evangelical Lutheran Church v. Lutheran Church–Missouri,* 661 S.W.2d 833, 838 (Mo.App.1983).

At the heart of this case is whether these plaintiffs, or anyone, could come into court and request relief against the city. The majority answers that question in the negative. The plaintiffs cannot sue as taxpayers since the city action did not waste or cost money, and they cannot sue as citizens who lived and built within eye-shot of the trust property which stood unimproved for over two decades.

The trial court dismissed plaintiffs' petition which alleged: 1) The individuals lived within one-fourth of a mile of the land in question; 2) The Bode Will and Trust required all land go to the city for parks and playgrounds, for the benefit of the citizens of St. Joseph, and directed that the city, "shall make improvements necessary to carry out the purpose ...";  3) The Trust deeded to the city, and Saint Joseph accepted the tract located at Cook Road and Belt Highway in December, 1970. The deed to the city, and the city's ordinance of acceptance, acknowledged the property would cause the land to be used for the purposes (parks, etc.) enunciated in the trust instrument; 4) The city, on May 16, 1990, enacted an emergency ordinance to convey the tract back to the Trust; however, on June 17th of the same year repealed the May ordinance and again authorized the conveyance back to the Trust. The tract was deeded on July 8, 1992; 5) On August 27, 1992, "The St. Joseph City Planning Commission recommended plans to rezone the 30 acre tract from residential to commercial ... despite the objections of neighboring residents, including some of the plaintiffs ...";  6) On October 7, 1992 the Trust conveyed the property to Wal–Mart.

In their two-count petition, plaintiffs alleged: A) diverter and misuse by the city in accepting the tract to be used for parks and recreation by the general public, and then conveying to Wal–Mart for retail use; and, B) asked for a declaration of law under Rule 87.02, (which allows "any person interested under a deed," or "whose rights are affected by a municipal ordinance, may obtain a declaration of rights") regarding the actions of the city in transferring the tract, and further asked for injunctive relief.

The prayer asked for the following declaratory relief: a declaration of the original ordinance of acceptance was irrevocable and

did not allow a use other than for a park; the tract was subject to a public trust for park use; the ordinance authorizing the deed back to the trust was invalid; the city deed back to the trust was a diversion and misuse; and, the Bode Trustees' deed to Wal–Mart was void. The prayer was for injunctive relief to get the property back to the city under the terms of the original conveyance from the trust to the city in 1970.

The opinion of the court holds these plaintiffs lack standing. If such be the law, then nobody has, or indeed ever had, standing to judicially question what was done here. Under the decision reached today, who would have had the standing to prod the city during the 22 years to build a park or improve the tract? Who, under today's decision, after the municipal decision was made to use the proceeds from the property for a park in another place, has ever had standing to contest? The answer is no one, and I believe this decision unnecessarily restricts access to the courts to redress grievances by unduly limiting the law of standing. If people owning houses within sight of the tract have no standing, then no one in St. Joseph could have brought this suit. Under this decision, a person living in the far-reaches of the city would be under the same infirmities as these dismissed plaintiffs—they had no right to declaratory relief because the city didn't lose money, so no taxpayers' suit would lie against the city. Likewise, under settled law, they could not have brought an action as a beneficiary, against a charitable trust, as only the attorney general has that authority. The majority overlooks reference in Am.Jur. to the effect of a recent trend to liberalize the rules of standing to allow private citizens to bring an action in the public interest. This case stands for the proposition that if the city makes money on land it has received from a charitable trust, and the trustees agree to selling the stockpiled lands, then there is no one to complain.

The majority holds the neighbors have no special rights to contest the city action (other than to mount the zoning change, which, had they done so under the facts here, the success of their effort would have been slim and none), and no other citizen of the city, no matter where they lived, could even enter the courtroom to seek redress. The majority speaks of the public interest here, and names the city and the trustees as the sole entities who can cross the courthouse threshold in order to determine what is in the public interest. And, as in this case, if those two entities agree on what is in the public interest, no other citizen of the city may have standing to challenge the same.

A party contesting, as here, a municipal ordinance, has standing "... if he can demonstrate that he is directly and adversely affected by the ordinance." *St. Louis County v. Village of Peerless Park*, 726 S.W.2d 405, 409 (Mo.App.1987). Standing relates to a party's personal stake in the outcome of a proceeding. *City of St. Louis v. Litz*, 653 S.W.2d 703, 706 (Mo.App.1983). The plaintiffs in the case at bar can certainly show an "economic detriment" if the ordinance allowing the conveyance of nearby land to the trust and then to Wal–Mart goes through. *Miller v. City of Manchester*, 834 S.W.2d 904, 906 (Mo.App.1992). The decision of the city acts directly on the interests of these homeowners giving them the necessary stake in the outcome to bring suit. *Metro Auto Auction v. Director of Revenue*, 707 S.W.2d 397, 400 (Mo. banc 1986); *Palmer v. St. Louis City*, 591 S.W.2d 39, 41 (Mo.App.1979).

It is inconceivable that property owners, within one-quarter mile of vacant ground (which was given to the city twenty-two years ago for use as a park, and now through a series of agreements, instead a wholesale club will be constructed in its place), are declared to have suffered no detriment and, thus, have no standing to challenge this action. I wholeheartedly disagree with the majority's declaration. According to the majority, the plaintiffs have no interest in compelling this vacant land to be put to the use for which it was expressly donated—a park. Furthermore, the majority holds not only can these nearby citizens not seek court action to enforce the land be used as a park, but also that no one else in the city can do so either.

Contrary to the majority assertion, the record **does** show these plaintiffs **did** present to the city council their opposition and grievances to the action.

The resolution of the case on the issue of standing, forecloses examination of whether there was a formal acceptance and user amounting to formal dedication, or a common-law dedication. *Village of Climax Springs v. Camp,* 681 S.W.2d 529, 533 (Mo. App.1984). See also; *State v. Young,* 27 Mo. 260 (1858); *Missouri Institute for Education of the Blind v. How,* 27 Mo. 211 (1858). Whether plaintiffs may ultimately show special injury is a matter to be decided by proof, and not by a preliminary determination of standing. cf. *Collins v. Vernon,* 512 S.W.2d 470, 473–74 (Mo.App. banc 1974).

The case of *Vestavia Hills Board of Education v. Utz,* 530 So.2d 1378 (Ala.1988), cited by the majority on the sufficiency of user relating to the ultimate issue of dedication, does at page 1382, conclude the property owners who brought the suit "... do have standing to ask for a declaratory judgment on the question of whether the subject property may now be used only for park and recreational purposes." Such should be the holding here on standing.

*Owens v. Elliott,* 257 N.C. 250, 125 S.E.2d 589 (1962) is not on point on the issue of standing. *Owens* concerns a public dedication claim for a street located in a subdivision plat, plus the court's ruling there was what this dissent proposes—to send the matter back for a finding based on the necessary facts. Likewise, *Armstrong v. Portsmouth Bldg. Co.,* 57 Kan. 62, 45 P. 67, 69 (1896) was a suit brought to compel use of property by a church, as opposed to another use. The court expressly held a private person may maintain an action to redress a common grievance if the action, "provides some peculiar damage to his individual interest or affects his rights in a different manner from the other members of the community...." *Id.* 45 P. at 69.

This dissent does not advocate frivolous suits by a few dissidents which have the effect of spoiling a needed and beneficial city action. Most suits of this nature will not succeed, but legitimate questions as to declaring a city's actions, should not be repelled by usage of too narrow a definition of taxpayer or citizen standing. The determination as to dedication or abandonment is best de-scribed by a trial, not under a motion to dismiss with its standard of review.

The trial court's decision on standing, under the scope of appellate review, should stand.

I would reverse the judgment and remand the case back for a trial on the merits.